CHERYL HEIDEN, Plaintiff-Appellee, v. CRAIG OTTINGER, Defendant-Appellant and Cross-Appellee (Robert Chapski, Cross-Appellant).

Second District No. 2—92—0649

Opinion filed June 11, 1993.

Robert A. Lewinthal, of Lewinthal, Sklamberg & Associates, of Northbrook, for appellant.

Robert A. Chapski and Randy K. Johnson, both of Law Office of Robert A. Chapski, Ltd., of Elgin, for Robert A. Chapski.

PRESIDING JUSTICE INGLIS delivered the opinion of the court:

Craig Ottinger (the father) appeals a judgment of the circuit court of Kane County which required him to pay $6,507.40 to the former attorney of Cheryl Heiden (the mother) in a paternity suit. The mother's former attorney, Robert Chapski, filed a cross-appeal contesting the court's denial of his petition for fees, sanctions and costs under Supreme Court Rule 137 (134 Ill. 2d R. 137). The father argues: (1) that the trial court did not have jurisdiction under the Illinois Parentage Act of 1984 (the Act) (Ill. Rev. Stat. 1991, ch. 40, par. 2501 *et seq.*) to order the father to pay attorney fees directly to Chapski; (2) that Chapski did not have a right to continue to pursue the father for fees after the mother had discharged him; (3) that the mother had a right to settle the paternity litigation without Chapski's consent and, in that settlement, accept responsibility for payment of her own fees and expenses; (4) that Chapski was estopped from proceeding with post-trial motions by filing citations on his judgment against the father; and (5) that the denial of the father's petition for sanctions under Rule 137 was an abuse of discretion.

The father makes one further contention, that the trial judge should not have vacated an order of June 13, 1989, awarding $5,200 in attorney fees to the mother from the father. On May 3, 1990, the court vacated the June 13 order and entered an order requiring the father to pay $5,200 directly to Chapski. The father claims that the May 3 order was an abuse of discretion. Chapski brought a motion, which was taken with the case, in which he asks us to strike this argument as incomprehensible. The father has filed a motion, which was also taken with the case, in which he asks permission to file a response to Chapski's motion to strike. We find both motions to be moot because the order of May 3, 1990, which vacated the June 13, 1989, order, was itself vacated on December 5, 1990, on the father's motion. With regard to the order of June 13, 1989, the father has already received the relief he is seeking here since the vacatur of the May 3, 1990, order operated to revive the June 13, 1989, order. (See *Bromberg v. People* (1907), 136 Ill. App. 602; see also *Zanzig v. H.P.M. Corp.* (1985), 134 Ill. App. 3d 617, 625.) The motions are thus denied as moot.

This case began when the mother filed a paternity suit against the father on June 25, 1986. The mother hired Chapski to represent her. A judgment of paternity was entered on March 16, 1989. On the same date, Chapski filed a petition for attorney fees. The father was or-

dered to pay the mother $5,200 for attorney fees on June 13, 1989. In July 1989, Chapski filed another petition seeking additional fees.

On September 25, 1989, after discussing the matter with the father, the mother and the father signed a settlement agreement drawn up by the father's lawyer. The agreement, *inter alia*, called for each party to pay his or her own costs and expenses and for the father to pay for the defense of any action brought against the mother by Chapski to obtain attorney fees. The record contains a letter, dated the next day, September 26, whereby the mother discharges Chapski as her attorney. Then, on September 28, 1989, the father and Chapski's client, the mother, went to court and had the settlement approved by the court without Chapski's knowledge. They also had the suit dismissed. The order approving the settlement, like the settlement agreement, provided that each party was to pay his or her own costs and expenses.

After learning of the settlement, Chapski tried in vain to have the order approving the settlement vacated. Later, on May 3, 1990, Chapski was successful in getting the court to vacate its order of June 13, 1989, awarding $5,200 to the mother. Chapski got the court to enter an order awarding the $5,200 directly to Chapski from the father. However, as mentioned, the May 3 order was vacated on December 5, 1990. On March 17, 1992, after Chapski filed his fifth petition for attorney fees, the court ordered the father to pay Chapski $6,507.40 in attorney fees. This order of March 17, 1992, is the order from which the father appeals. Chapski cross-appeals the denial, also on March 17, of his motion for sanctions and fees under Rule 137.

## APPEAL

■ First, we address the father's claim that the trial court did not have jurisdiction under the Act to order the father to pay attorney fees directly to Chapski. The "Costs" provision of the Act states:

"Except as otherwise provided in this Act, the court may order reasonable fees of counsel *** to be paid by the parties in accordance with the relevant factors specified in Section 508 of the Illinois Marriage and Dissolution of Marriage Act, as amended." (Ill. Rev. Stat. 1991, ch. 40, par. 2517.)

Section 508 of the Illinois Marriage and Dissolution of Marriage Act (the Dissolution Act) allows the court to order that attorney fees "be paid directly to the attorney, who may enforce such order in his name, or that they be paid to the relevant party." Ill. Rev. Stat. 1991, ch. 40, par. 508(c).

We have not found a case factually on point with the present case, but we believe that by allowing courts in paternity suits to award attorney fees "in accordance with the relevant factors" in section 508, the Act permits awards of attorney fees payable directly to attorneys. It is significant that section 17 does not limit the subparagraphs of section 508 that are incorporated into section 17. If attorneys in suits under the Act were not to be awarded attorney fees directly, section 17 could have exempted subparagraph (c) of section 508 from incorporation, which is the subparagraph allowing attorneys to obtain judgments in their own names. Moreover, whether an attorney requesting fees under the Act should be paid directly, or whether an order providing for an award from one party to another is sufficient to ensure the attorney's payment, is certainly a "factor" to be considered when fashioning an award of attorney fees. Thus, we conclude that Chapski could obtain a judgment for attorney fees in his own name under the Act.

Having decided that Chapski could obtain a judgment for attorney fees in his own name, we come to the crux of the case: whether Chapski could pursue the father, rather than the mother, whom Chapski had represented, after Chapski had been discharged by the mother and after the mother and father had settled the case with an agreement to pay their own attorney fees. The father argues that because Chapski was not a party to the suit, he should not have been allowed to prolong the litigation after the parties had settled and discharged him. Under the facts of this case, however, we hold that Chapski was correctly allowed to pursue the father for attorney fees, even after his discharge and the settlement of the case.

First, we recognize that a client has "an absolute right" to settle her case without her attorney's consent. (See *Herman v. Prudence Mutual Casualty Co.* (1969), 41 Ill. 2d 468, 476; see also Rules of Professional Conduct, Rule 1.2(a) (134 Ill. 2d R. 1.2(a)) (lawyer must honor client's decision whether to accept settlement offer).) The mother could thus settle her action with the father directly.

What troubles us is that the mother settled not only the merits of her suit, but also the issue of responsibility for attorney fees, *before* discharging Chapski and without any notice to Chapski, who was still her attorney of record. (See Rules of Professional Conduct, Rule 1.16(a)(4) (134 Ill. 2d R. 1.16(a)(4)) (lawyer shall withdraw from employment if discharged by client); Supreme Court Rule 13(c)(2) (134 Ill. 2d R. 13(c)(2)) (attorney cannot withdraw his appearance for party without leave of court and notice to other parties).) Even more troubling is that the attorney representing the father drew up a settle-

ment agreement for the parties, who then went to court and had the settlement approved and the suit dismissed, all while the mother was still represented by counsel. It thus appears that counsel for the father violated Rule 4.2 of the Rules of Professional Conduct (134 Ill. 2d R. 4.2), which prohibits lawyers hired to represent a party from communicating with other represented parties on the subject of the representation without the consent of those other parties' attorneys.

Second, we recognize that a client, ordinarily, can discharge her attorney "at any time, with or without cause." (*Balla v. Gambro, Inc.* (1991), 145 Ill. 2d 492, 503.) In the usual case then, the mother would seem to have been within her rights in discharging Chapski and settling her lawsuit. The facts as they stand in this case, however, give rise to a distinct inference that there was an attempt to hinder Chapski's recovery of payment for the services he rendered. We conclude that the actions of the mother and father did not prevent Chapski from pursuing the father to recover attorney fees.

We have found no cases arising under the Act which have specifically spoken to a discharged attorney's right to pursue his former client's adversary for fees after the suit had settled. Several related cases are nonetheless instructive.

In *Gitlin v. Hartmann* (1988), 175 Ill. App. 3d 805, this court held that an attorney who had represented the defendant in a suit under the Act, and who had apparently withdrawn, was required to bring his application for attorney fees against the defendant in the still-pending visitation proceedings, not in a separate suit. (*Gitlin*, 175 Ill. App. 3d at 808-11.) The *Gitlin* court extended its holding in *In re Marriage of Baltzer* (1986), 150 Ill. App. 3d 890, that an attorney who had been discharged by his client in a dissolution of marriage suit and who had filed a petition for fees in that suit had to pursue his fees in that pending action and could not bring a new suit against his former client. (*Baltzer*, 150 Ill. App. 3d at 893-96.) *Baltzer* held that the dissolution court had jurisdiction over the attorney to decide the fee issue. It noted that "attorneys for the litigants in a dissolution proceeding are considered as parties in interest in an action for attorney fees to the extent that while such fees are generally awarded to the client, they properly 'belong' to the attorney." (*Baltzer*, 150 Ill. App. 3d at 893.) Thus, under *Gitlin*, as an extension of *Baltzer*, Chapski could at least pursue the mother in a still-pending paternity suit for the payment of his fees after the mother had discharged him.

We must next decide whether Chapski could attempt to obtain his fees from the father rather than the mother after his discharge. We see no reason why the fact that Chapski was discharged by the

mother should limit him to recovering his fees from her. Again, *Baltzer* is instructive. There, the court stated that the trial court hearing the discharged attorney's petition for fees under section 508 of the Dissolution Act could order payment of those fees by either party to the dissolution action. (*Baltzer*, 150 Ill. App. 3d at 894.) As noted, section 17 of the Act incorporates the provisions of section 508 of the Dissolution Act. We thus conclude that the fact that Chapski was discharged by the mother would not prohibit him from pursuing the father for payment of his fees in a still-pending paternity action.

The issue now becomes whether the parties' settlement agreement, specifically that portion requiring the parties to be responsible for their own costs and expenses, barred Chapski from going after the father for his fees. There is no denying that the mother had a right to settle her case without Chapski's consent. (See *Herman v. Prudence Mutual Casualty Co.* (1969), 41 Ill. 2d 468, 476.) The question is whether Chapski had such an interest in the payment of his fees that the mother could not unilaterally decide which party would pay.

Initially, we believe that a settlement of the merits of the present suit, without more, would not have prevented Chapski from seeking payment of his fees by the father. In *In re Marriage of Conway* (1986), 139 Ill. App. 3d 1062, the court held that the trial court in a dissolution action had jurisdiction to consider a petition for attorney fees filed against the husband by the wife's attorney even though the parties had remarried, thus abating the dissolution suit. (*Conway*, 139 Ill. App. 3d at 1065-66.) *Conway* relied in part on *In re Marriage of Dague* (1985), 136 Ill. App. 3d 297, in which attorneys who had represented a wife in dissolution proceedings were allowed to maintain a petition for fees against the husband after the wife had died and the suit had abated (*Dague*, 136 Ill. App. 3d at 300). Just as *Conway* broadened the holding in *Dague* to apply to a case in which abatement occurred due to remarriage rather than the death of a party, we believe the same result would obtain in a case in which the merits of the suit were settled by the parties. Further, we see no reason for the holdings in *Conway* and *Dague* to be limited to cases brought under the Dissolution Act, especially since the attorney fee provisions of the Act and the Dissolution Act are analogous.

As this court stated in *Baltzer*, an attorney has standing to maintain a claim for attorney fees in a dissolution action because he is a party in interest with regard to attorney fees. (*Baltzer*, 150 Ill. App. 3d at 893; see also *In re Marriage of Pagano* (1989), 181 Ill. App. 3d 547, 555.) We need not decide whether, in the usual case, parties may

settle the issue of responsibility for attorney fees when they settle their dispute. This is not a run-of-the-mill case in which the parties pursue only their own best interests. Rather, as the record reveals, a strong inference arises here that there was a concerted effort made to place obstacles in the path to Chapski's reimbursement. First, the mother did not have the financial ability to pay the several thousand dollars Chapski was ostensibly owed. On June 13, 1989, three months before the settlement agreement was executed, the trial court found in an order that the mother did not have the ability to pay her attorney fees. In the same order, the court found that the father did have the financial ability to contribute to the mother's attorney fees. Moreover, the mother testified at a March 17, 1992, hearing that she still was unable to pay attorney fees.

Second, it is apparent from the record that the mother harbors animosity toward Chapski. The mother testified at the March 17, 1992, hearing that she was unsatisfied with Chapski's work on the present suit and believed Chapski's actions caused the statute of limitations to run on a lawsuit against her former employer. She stated, "Therefore, I cannot sit here and say I owe money. I didn't get what I wanted. I did not get what I wanted."

Third, the second trial judge to preside over this action specifically found that there was an attempt to "stiff" Chapski on his attorney fees. Due to the egregious nature of the facts in this case, we find that the portion of the parties' settlement agreement that called for each party to pay his or her own attorney fees is void.

The case of *In re Marriage of Kessler* (1982), 110 Ill. App. 3d 61, is not to the contrary. In *Kessler*, the appellate court held that it was improper for the trial court to have assessed a portion of the wife's attorney fees against the husband in a dissolution action where the parties had executed a settlement agreement requiring each party to pay his or her own attorney fees. (*Kessler*, 110 Ill. App. 3d at 74-75.) The court upheld the attorney fee portion of the settlement agreement for three reasons: the terms of the agreement were clear and unequivocal, the agreement was freely and knowingly entered into by the parties and approved by the court, and there was no showing that the wife was unable to pay her fees. (*Kessler*, 110 Ill. App. 3d at 75.) The court further noted that the parties' intent would be given full force and effect since it was not "repugnant to another rule of law [or] *** against public policy." *Kessler*, 110 Ill. App. 3d at 75; see also *Cimino v. Cimino* (1968), 93 Ill. App. 2d 412, 416.

Unlike *Kessler*, it is admitted in this case that the mother does not have the ability to pay her attorney fees. We also believe that giv-

ing effect to the parties' intentions here would most likely run afoul of Rule 4.2 of the Rules of Professional Conduct (134 Ill. 2d R. 4.2) prohibiting retained attorneys from communicating with other represented parties in the same matter on the subject of representation without the consent of those other parties' attorneys. The record here shows that the settlement agreement was drawn up by the father's lawyer and executed by the parties, all without Chapski's knowledge and while he was attorney of record for the mother. We will not condone such actions. We therefore hold that, under the circumstances here presented, the provision in the settlement agreement requiring each party to pay his or her own attorney fees is void. Thus, the trial court properly awarded attorney fees to Chapski payable by the father. It is not necessary to our decision to pass on the validity of the settlement agreement in its entirety.

■ We next address the father's claim that Chapski was estopped from filing post-trial attorney fee petitions by filing citations to discover assets against the father. The father argues that estoppel comes into play because a motion for post-trial relief stays the enforcement of a judgment and because citations to discover assets can only be filed where there has been a prior final and enforceable judgment. We find this argument to be waived.

The father mentions in his brief three citations to discover assets and a motion for sequestration proceedings. However, he does not provide in his argument any cites to the voluminous record in this case. Moreover, the father merely sketches his argument in a single 10-line paragraph containing minimal cites to authority for general propositions of law. An adequate argument here would need to at least provide a background as to when the citations were filed in relation to the many orders entered, modified and vacated in this case. "A reviewing court is entitled to have issues clearly defined with pertinent authority cited and coherent arguments presented; arguments inadequately presented on appeal are waived. *** A reviewing court will not become an advocate for, as well as the judge of, points the appellant seeks to raise." *Holmstrom v. Kunis* (1991), 221 Ill. App. 3d 317, 325; see also 134 Ill. 2d R. 341(e)(7).

■ The father next argues that the trial court erred in refusing to grant his motion for sanctions under Rule 137. Although the father appears to claim in his brief that his Rule 137 motion was denied on its merits, it was actually denied on September 5, 1991, based on the failure of the father or his attorneys to appear at a hearing on Chapski's motion to dismiss the Rule 137 motion. The father thereafter filed a motion to vacate the September 5 order. The record is then si-

lent as to the disposition of the motion. In an *ex parte* letter to the trial judge dated October 11, 1991, the father's attorney states that the Rule 137 motion was originally scheduled for hearing on November 25, 1991. He complains that he received no notice of the September 5 hearing date and that nothing was scheduled for a hearing on September 5. The attorney closes by implying that he would be arguing the Rule 137 motion on November 25. There is no transcript of any November 25 proceedings included in the record. Thus, we have no way of knowing what transpired with regard to the Rule 137 motion or the motion to vacate the September 5 order.

It is the appellant's burden to supply us with a record that is complete and sufficient to decide the issues in controversy, and in the absence of an adequate record, it is presumed that the trial court's judgment conforms to the law and has an adequate factual basis. (*Lakeland Property Owners Association v. Larson* (1984), 121 Ill. App. 3d 805, 808.) Because we are left in the dark with regard to this issue, we will not disturb the judgment below on the issue of the father's Rule 137 motion.

### CROSS-APPEAL

In his cross-appeal, Chapski argues that the trial court erred in denying his motions for Rule 137 sanctions, or, in the alternative, that the trial court should not have denied his final Rule 137 motion without an evidentiary hearing.

Having reviewed the transcript of proceedings, we see that Chapski was indeed given a hearing on his motion. At the hearing on March 17, 1992, Chapski told the judge that he wanted to dispose of the motion that day, which was the day it was filed. Chapski was then given an opportunity to present evidence and argument on the motion. Chapski and the father's attorney argued the merits of the motion. Chapski's claim that he was denied a hearing is without merit.

■ However, the trial judge denied the motion without making any specific findings on the matter. This was contrary to the rule announced in *In re Estate of Smith* (1990), 201 Ill. App. 3d 1005, where the court cautioned trial courts to make specific findings on sanction issues. (*Smith*, 201 Ill. App. 3d at 1009-10.) We recognize that the trial court has the discretion to award sanctions under Rule 137 (see *Singer v. Brookman* (1991), 217 Ill. App. 3d 870, 879), but we cannot tell whether that discretion was abused on the present record. Moreover, we agree with the *Smith* court's concern that deciding a sanction issue without explicit findings would "tend[ ] to establish too many *ad hoc* rules of law as to the correct result in any given case."

(*Smith,* 201 Ill. App. 3d at 1010.) Consequently, we vacate the order of the circuit court denying Chapski's motion for Rule 137 sanctions and remand for further proceedings on that issue. We affirm the remainder of the judgment of the circuit court of Kane County.

Affirmed in part; vacated in part and remanded.

GEIGER and BOWMAN, JJ., concur.