No. 00-161

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 358

303 Mont. 327

15 P. 3d 926

IN THE MATTER OF

THE ESTATE OF

GORDON M. NETZORG,

Deceased.

APPEAL FROM: District Court of the Eighth Judicial District,

In and for the County of Cascade,

The Honorable Thomas McKittrick, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Robert J. Emmons, Emmons & Sullivan, Great Falls, Montana (Elinor Luse)

For Respondent:

Sue Ann Love, Jardine, Stephenson, Blewett & Weaver, Great Falls, Montana; Gary J. Ceriani, Davis ;& Ceriani, Denver, Colorado

Submitted on Briefs: July 13, 2000
Decided: December 27, 2000

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Defendant Elinor Luse, f/k/a Elinor Netzorg (hereinafter Luse), appeals an order entered by the Eighth Judicial District Court, Cascade County, on January 28, 2000, granting summary judgment in favor of the Plaintiffs, Gordon W. Netzorg, Nancy Cachette, and John M. Netzorg (hereinafter Children), who are the natural children of Gordon M. Netzorg and his first wife, Naomi Netzorg. Luse is the surviving spouse and second wife of Gordon M. Netzorg. We affirm.

¶2 Although phrased in various forms, Luse's issues can be condensed as follows:

> If counsel for the Children violated one of Montana's Rules of Professional Conduct in negotiating the settlement agreement with Luse, is the settlement agreement void and unenforceable?

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Gordon M. Netzorg married the defendant, Luse, in 1979 after his first wife, Naomi, died in Texas in 1978. The couple moved to Great Falls, Montana. After Netzorg's death in 1992, a dispute arose between the Children and Luse concerning the parties' respective rights to certain personal property.

¶4 Specifically, the Children maintained that following the death of his first wife, their father had retained numerous family heirlooms which the Children had rightfully inherited. The Children contend that they had agreed with their father that he could retain possession of the heirlooms until his death, at which time the heirlooms were to be returned to their possession.

¶5 The Children allege that upon their father's death, Luse refused to return the various items, and eventually left Montana and moved to Illinois, taking with her the heirlooms in question. Subsequently, she refused to return any of the property. As a result, the Children filed this action, which would eventually be combined with the intestacy proceedings

already underway, in Cascade County. One of the Children, Gordon W. Netzorg, was appointed Special Administrator of those proceedings, and appears now in that role as well as individually.

¶6 After filing a Notice to Take Deposition on April 18, 1995, counsel for the Children traveled to Aurora, Illinois, where Luse resided, for the purpose of taking her deposition on May 16, 1995. The Children allege that their counsel, prior to the deposition, discussed this matter with counsel for Luse, and was informed that Luse's counsel would not be attending the deposition. They further contend that counsel for Luse encouraged counsel for the Children to discuss settlement.

¶7 During the course of the deposition, the possibility of a settlement was discussed, which led to a protracted negotiation between the parties. A settlement agreement was reached that day that set forth a list of property that Luse would deliver to the Children, and the conditions for the dismissal of this litigation. The Children contend that the agreement required that Luse would return some, but by no means all, of the heirlooms in question. The agreement was read into Luse's deposition transcript.

¶8 On May 22, 1995, counsel for the Children forwarded a copy of the agreement to Luse and her counsel. Counsel for the Children encouraged counsel for Luse to review the agreement and advise them "as soon as possible of any changes you desire." The record before this Court includes an apparent handwritten note from Luse's counsel indicating that the settlement agreement looked fine, that he thought counsel for the Children had "handled it well," that he would call Luse, and that "we'll get it done this week."

¶9 Complications arose. Apparently, Luse alleged that she did not possess certain items that she had agreed to transfer to the Children. No items were delivered and Luse never executed the agreement. Nevertheless, counsel for Luse, on August 23, 1995, assured counsel for the Children that "Elinor has no intention of not abiding by the terms of the settlement agreement" and that "if she has the items, they are going to be sent to you." A few days later, counsel for Luse encouraged her to contact counsel for the Childen, make arrangements for shipping, and suggested that "let's get this over with."

¶10 During the next 18 months Luse did not deliver the personal property in question and refused to sign the agreement. The Children initiated this independent action to enforce the settlement agreement in October of 1996. The Children sought an order for specific performance that would require Luse to immediately deliver all items of personal property

in her possession pursuant to the May 1995 settlement agreement.

¶11 Following a hearing, the District Court granted the Children's motion for summary judgment on January 28, 2000, and ordered that the parties specifically perform the Settlement Agreement. In reaching its conclusions, the court rejected Luse's argument that the settlement agreement was void due to the Children's counsel's alleged misconduct in contravention of Rule 4.2, Montana Rules of Professional Conduct. Luse alleged that the agreement was void and unenforceable because counsel for the Children had conducted negotiations and reached a settlement with Luse without permission from her counsel. The court concluded that "[e]ven assuming that this is the proper forum in which to raise such issues, the Court is satisfied from reviewing the detailed affidavit of Mr. Ceriani [counsel for the Children], and the exhibits attached thereto, that Mr. Ceriani reasonably believed he had consent to communicate directly with [Luse]."

¶12 The District Court then concluded that a "valid and enforceable settlement agreement was indeed entered into and that the formal Settlement Agreement drafted by Mr. Ceriani (which incorporates the provisions for mutual releases and the dismissal of all pending litigation between the parties) accurately sets forth the terms and conditions of the contract between the parties."

¶13 Luse appeals the order granting summary judgment on the sole grounds that the settlement agreement is void and unenforceable due to the alleged professional conduct rule violation.

## STANDARD OF REVIEW

¶14 This Court reviews an order granting summary judgment under Rule 56, M.R.Civ.P., by utilizing the same criteria as the district court. *See Erker v. Kester*, 1999 MT 231, ¶ 16, 296 Mont. 123, ¶ 16, 988 P.2d 1221, ¶ 16. Summary judgment is a remedy which should be granted when there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Rule 56(c), M.R.Civ.P.

## DISCUSSION

¶15 Luse argues that the May 16, 1995 settlement agreement obtained by the Children's counsel, who allegedly violated Rule 4.2 of the Montana Rules of Professional Conduct in the process, is void and unenforceable against her. We disagree.

¶16 Even assuming that counsel for the Children violated Rule 4.2, M.R.Pro.C., this conduct alone does not render an otherwise enforceable agreement void and unenforceable as a matter of law. Thus, we conclude that a professional conduct rule violation, standing alone, simply does not rise to the level of a genuine issue of material fact necessary for the reversal of a summary judgment.

¶17 Rule 4.2, M.R.Pro.C., provides that "[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so."

¶18 Luse relies on a Wyoming decision that she contends "unequivocally" establishes that an agreement reached involving a violation of Rule 4.2 is void and unenforceable. The Wyoming Supreme Court, in *Sandstrom v. Sandstrom* (Wyo. 1994), 884 P.2d 968, refused to enforce an agreement in favor of an attorney "who admittedly engaged in conduct which we consider to be unethical to obtain the agreement." *Sandstrom*, 884 P.2d at 971 (citing *Heiden v. Ottinger*, 616 N.E.2d 1005, 1011 (1993)). The Wyoming court concluded that the "settlement agreement did not create a genuine issue of material fact because, as a matter of law, it was not enforceable against the wife." *Sandstrom*, 884 P.2d at 971.

¶19 The underlying facts in *Sandstrom* reveal that the husband, an attorney, admittedly conducted *ex parte* communications with his spouse during the course of a quiet title action related to the couple's divorce, all the while knowing she was represented by counsel. The product of the communications was a settlement agreement. At the time, the wife was hospitalized. In response to his motion to dismiss her claim, she argued that the agreement was a product of undue influence. *See Sandstrom*, 884 P.2d at 969-70. The court concluded that the lower court had not erred when it denied the husband's motion to dismiss and granted the wife's motion for entry of summary judgment. *See Sandstrom*, 884 P.2d at 971.

¶20 Luse also relies on the Illinois court's decision *Heiden*, cited in *Sandstrom*, which similarly concluded that a provision in a settlement agreement was void due in part to a Rule 4.2 violation. *See Heiden*, 616 N.E.2d at 1011. In that case, a discharged attorney of one party to a paternity suit was permitted to pursue the collection of his fees from the opposing party, although the parties had settled the matter on their own, and had agreed to pay their own attorney's fees. Apparently, the mother and father colluded to prevent the mother's former attorney from collecting his fees from the father, and the settlement

agreement was drafted by the father's attorney. *See Heiden*, 616 N.E.2d at 1008.

¶21 Luse claims, therefore, that it is axiomatic that consent to discuss settlement issues at a deposition does not include consent to make a binding final settlement agreement without express consent from opposing counsel, who was not present and who did not know the terms of the purported final settlement agreement. Thus, Luse argues that the Children's counsel's clear violation of Rule 4.2, M.R.Pro.C., renders the settlement agreement void and unenforceable as a matter of law in accordance with the holdings of the Wyoming and Illinois decisions.

¶22 It is likewise axiomatic, however, that a client has an absolute right to settle his or her case without the consent of counsel, as indicated by the authority upon which Luse relies. *See Heiden*, 616 N.E.2d at 1010 (stating that there is "no denying that the mother had a right to settle her case without [her attorney's] consent"). *See also* Rule 1.2(a), M.R.Pro.C. (providing that a lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter). It is further axiomatic, according to another Illinois court decision, that in order for a trial court to consider an attorney conduct rule violation, a party must establish that the violation prejudiced his or her rights. *See Beale v. Edgemark Financial Corp.* (Ill.App.Ct. 1998), 697 N.E.2d 820, 827 (concluding that the only infirmity with a settlement agreement was that the attorneys who obtained it may have done so by violating Rule 4.2 of the Illinois Rules of Professional Conduct, and that without more, such conduct can only be sanctioned by the state's disciplinary commission). A closer reading of the case law relied upon by Luse here, in fact, reveals that such prejudice was claimed and clearly proven. *See*, *e.g.*, *Sandstrom*, 884 P.2d at 969-70 (admitted professional conduct rule violation substantiated substantive claim of undue influence).

¶23 On appeal, Luse does not claim that the alleged rule violation was part and parcel of her substantive claim that she did not give valid consent, or was perhaps subjected to undue influence in her attorney's absence. In no sense does she claim that the agreement itself is unconscionable, or contains particular prejudicial provisions. *See*, *e.g.*, § 28-2-102, MCA (identifying consent as an essential element of a contract formation); § 28-2-301, MCA (requiring that consent be free, mutual, and communicated by parties to the contract); § 28-2-401, MCA (providing that consent is not real or free when obtained through duress, menace, fraud, undue influence, or mistake). Under such theories, evidence of a rule violation may serve to establish that an agreement should be ruled voidable as a matter of law. *See* § 28-2-1711, MCA (allowing party to rescind a contract where consent was obtained through duress, menace, fraud or undue influence).

¶24 Instead, Luse contends that the rule violation standing alone renders the otherwise enforceable agreement void--even though the record clearly demonstrates that both she and her counsel at one point tacitly admitted that the agreement was valid and enforceable. We are less than persuaded by her authority for this proposition.

¶25 In a recent decision handed down by this Court (but after this appeal was filed), we ruled that a party cannot receive relief from a district court for the mere misconduct of an attorney or firm, due to a lack of jurisdiction. *See Schuff v. A.T. Klemens & Sons*, 2000 MT 357, ¶ 34. (citing *Carlson v. Morton* (1987), 229 Mont. 234, 238, 745 P.2d 1133, 1136). As the Ninth Circuit Court of Appeals stated in a case arising in California, the "Rules of Professional Conduct do not establish substantive legal duties--they neither create, augment nor diminish any duties." *In re Kirsh* (9th Cir. 1992), 973 F.2d 1454, 1461 (stating that a rule violation, standing alone, does not prove that a fiduciary duty has been breached).

¶26 Thus, we concluded in *Schuff* that a proven or admitted professional conduct rule violation is not *prima facie* grounds for a party's particular request for relief. We concluded that prejudice flowing from the rule violation must be proven. *See Schuff*, ¶ 37.

¶27 Thus, even if the District Court had determined that counsel for the Children had, in fact, violated Rule 4.2, M.R.Pro.C., it was not necessarily obliged to render the relief sought by Luse here on appeal. Luse was still obligated to establish that the contract should be deemed voidable as a matter of law, pursuant to the controlling statutes cited above, or on other legal grounds.

¶28 We conclude, therefore, that there are no genuine issues of material fact as to the existence or the terms of the settlement agreement between the parties, and that the Children are entitled to judgment as a matter of law.

¶29 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ J. A. TURNAGE

/S/ TERRY N. TRIEWEILER

/S/ KARLA M. GRAY

/S/ JIM REGNIER