**William B. BLANCHARD, on behalf of himself and all others who sold, relinquished rights in or were deprived of ownership of shares of EdgeMark Financial Corporation common stock on or after April 1, 1993 and on or before November 1, 1993, Plaintiff,**

v.

**EDGEMARK FINANCIAL CORPORATION, Roger A. Anderson, and Charles A. Bruning, Doe Group I, Doe Group II and Old Kent Financial Corporation, Defendants.**

No. 94 C 1890.

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 25, 1997.

Reuben L. Hedlund, Edward F. McCormack, Edwin L. Durham, Charles A. Tausche, Hedlund, Hanley & John, Chicago, IL, for Plaintiff.

Paul E. Freehling, Victoria Perette Pappas, D'Ancona & Pflaum, Chicago, IL, Daniel R. Gravelyn, Warner, Norcross & Judd, Grand Rapids, MI, for Defendants.

## MEMORANDUM OPINION AND ORDER

ASHMAN, United States Magistrate Judge.

Three motions are currently before this Court: Plaintiffs' Objections to Settlement and Motion for Sanctions, Plaintiffs' Motion to Set Aside and Vacate the Release of Plaintiff Beale's Claims in this Action and the Related Circuit Court of Cook County Action (Motion to Set Aside and Vacate),[1] and Defendants', EdgeMark Financial Corporation, Roger A. Anderson, Charles A. Bruning, Doe Groups I and II, and Old Kent Financial Corporation ("Defendants"), Motion to Disqualify Reuben L. Hedlund And All Other Attorneys at Hedlund, Hanley & John From Further Representation Of The Plaintiff Class ("Motion to Disqualify").

### I. Background

These motions arise out of series of lawsuits filed by the parties in both state and federal court. Merchandise National Bank ("MNB"), a subsidiary of Old Kent Bank's predecessor, Defendant EdgeMark Financial Corporation ("EdgeMark"), fired the first shot in this morass of litigation by filing a state court collection action in 1993 against Joseph S. Beale ("Beale"), seeking payment on two promissory notes; the first in the

---

1. This motion was submitted in response to Defendants' contentions that, although Plaintiffs objected to the settlement between Beale and Old Kent Bank, they made no formal request to vacate and set aside the settlement.

principal amount of $1,750,000.00 and the second in the amount of $758,854.00.

Beale then filed a federal class action against EdgeMark Financial Corporation, Roger A. Anderson and Charles A. Bruning on July 15, 1994, wherein he asserted claims on behalf of himself and "all persons who sold, relinquished rights in or were deprived of ownership of shares of EdgeMark common stock on or after April 1, 1993 and on or before November 1, 1993." In the initial class complaint,[2] Beale, as the class representative, essentially alleged that the Board of Directors for EdgeMark deliberately concealed from the shareholders the fact that the company was the target of a friendly takeover bid by Old Kent Financial Corporation ("Old Kent") and was likely to be sold at a price vastly in excess of the then current per share market price.[3] The class was officially certified on August 1, 1995, when Judge Andersen adopted this Court's Report and Recommendation and granted Beale's motion for class certification under FED. R. CIV. P. 23(b)(3).

In connection with the federal class action, Beale also filed a discovery petition in Illinois state court seeking the production of a letter Defendants sent to the National Association of Securities Dealers ("NASD") in response to NASD's inquiry into suspicious trading activity which allegedly occurred immediately prior to the announcement of EdgeMark's sale to Old Kent. While Beale was the only named plaintiff in the discovery petition, the Plaintiffs' contend that the petition was intended to benefit all of the class members because the document allegedly contained information which may have provided evidence of insider trading by individuals or couples affiliated with EdgeMark. On June 9, 1994, Cook County Circuit Judge Kenneth L. Gillis ordered Defendants to produce the NASD letter. This decision was affirmed by the

Illinois Appellate Court on March 29, 1996 and on October 2, 1996, the Illinois Supreme Court denied EdgeMark's petition for leave to appeal, thereby making Judge Gillis' decision final.

Throughout the course of the MNB litigation, Beale was represented by Attorney Paul Carroll ("Carroll") of Gould & Ratner. However, for purposes of the class action and the discovery petition suit, Beale was represented by Reuben L. Hedlund of Hedlund, Hanley & John.

At this point, the problems which resulted in the motions now before the Court commenced. On May 29, 1996, Attorney Carroll apparently approached the Defendants on behalf of Beale in an effort to ascertain the Defendants' interest in reaching a settlement. After conferring with his clients, Defendants' counsel, Attorney Gravelyn ("Gravelyn"), informed Carroll that the Defendants would only be interested in entering into settlement negotiations for the purpose of resolving all of the claims between the parties. The negotiations proceeded with Gravelyn acting on Defendants' behalf and Carroll acting on Beale's behalf, and, on June 12, 1996, a settlement was executed which resolved all of the claims between Beale and the Defendants.

As a result of the settlement, Beale agreed to pay $100,000.00 and to release all of his claims against the Defendants, including his class claims and his discovery petition claim, in exchange for the Defendants' forgiveness of his indebtedness on the two notes which were the subject of the MNB litigation and the release of certain collateral.[4] Although Beale agreed to release all of his claims against the Defendants, the settlement recognized that the class action would continue and provided for a reasonable time to enable

---

**2.** The complaint has since been amended to include additional parties and causes of action, including a claim for insider trading.

**3.** In Count I, Beale alleged that Defendants violated the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) when they schemed to withhold material information relating to the sale of Edge-Mark stock. In Count II, Beale alleged the same facts under a theory of equitable fraud.

**4.** The Court was informed during oral argument and assumes as true that this settlement has been consummated and the collateral that was released has been sold and transferred to a third party not involved in any of the lawsuits mentioned earlier.

Plaintiffs to replace Beale as the class representative.

After it became obvious that the parties were not going to present the settlement to this Court for review and approval, the Plaintiffs filed their Objections to the Settlement and Motion for Sanctions, and later, their Motion to Set Aside and Vacate. Defendants then filed their motion to disqualify Reuben Hedlund and Hedlund, Hanley & John from further representation of the Plaintiff class. The Court addresses each of these motions below, turning first to the Plaintiffs' Objections to the Settlement and Motion For Sanctions and Plaintiffs' Motion To Set Aside and Vacate.

## II. *Discussion*

### A. Plaintiffs' Objections To The Settlement and Motion For Sanctions and Plaintiffs' Motion To Set Aside and Vacate

Plaintiffs contend that, because the settlement was not submitted to the Court for review and approval prior to execution, the Defendants violated FED. R. CIV. P. 23(e) in procuring the settlement agreement. Further, Plaintiffs object to the settlement agreement on the ground that it was executed without the knowledge and consent of either Reuben Hedlund or the firm of Hedlund, Hanley and John and was therefore obtained in violation of RULE OF PROFESSIONAL CONDUCT 4.2. The Court addresses each argument in turn.

### 1. *The Defendants' Conduct Violated FEDERAL RULE Of CIVIL PROCEDURE 23*

■ FEDERAL RULE OF CIVIL PROCEDURE 23 governs the certification and administration of federal class actions. Pursuant to subsection (e) of Rule 23, a class action may not be dismissed or compromised without the approval of the court and notice of the proposed dismissal or compromise to all members of the class in whatever manner the court directs. FED. R. CIV. P. 23(e). Plaintiffs contend that, by failing to submit the settlement prior to execution for judicial re-

view and approval, the Defendants have violated Rule 23(e). We agree.

■ Class actions impose special duties on the Court, the class representative and class counsel. The Supreme Court, in describing the responsibilities of the class representative, noted:

> [h]e sues, not for himself alone, but as a representative of a class comprising all who are similarly situated. The interests of all in the redress of the wrongs are taken into his hands, dependent on his diligence, wisdom and integrity... He is a self-chosen representative and a volunteer champion. The Federal Constitution does not oblige the state to place its litigating and adjudicating processes at the disposal of such a representative, at least without imposing standards of responsibility, liability and accountability which it considers will protect the interests he elects himself to represent.

*Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549–50, 69 S.Ct. 1221, 1227, 93 L.Ed. 1528 (1949). Thus, a class representative, by assuming a representative role on behalf of the absent class members, voluntarily accepts a fiduciary obligation toward the class that may not be abandoned at will or by agreement with the defendant if prejudice to the absent class members would inhere or if the class representative has exploited the class action procedure for his own personal gain. *Shelton v. Pargo, Inc.*, 582 F.2d 1298, 1305 (4th Cir.1978); *see also* MANUAL FOR COMPLEX LITIGATION, (Second) § 30 (1985).

■ Because of the representative nature of class suits and the numerous and sometimes divergent interests that are at stake, the court is charged with protecting the class members who, through their absence, are unable to protect themselves. *See* MANUAL FOR COMPLEX LITIGATION, (Third) § 30 (1995). In order to carry out this role as guardian of the absent class member's interests, the court has the power and the duty, as set forth in Rule 23(d)[5] and (e) to

---

5. As the *Shelton* court noted, apart from the question of whether Rule 23(e) provides authority for judicial control over settlements and com-

promises with the representative parties, the supervisory power conveyed by Rule 23(d) provides an alternative basis for the Court's exercise of

ensure that the class representative and class counsel do nothing to compromise or otherwise prejudice the interests of those whom they have undertaken to represent. *Shelton*,[6] 582 F.2d at 1306; *Grunin v. International House of Pancakes*, 513 F.2d 114, 123 (8th Cir.1975); *Runion v. U.S. Shelter*, 98 F.R.D. 313, 318 (D.S.C.1983).

■ In keeping with the above responsibilities, we conclude that, pursuant to Rule 23(e), once the class has been certified, any settlement with the class representative, even if only of his individual claims, must be submitted to the Court for review and approval. *See* NEWBERG ON CLASS ACTIONS, § 11.75, at 11–200–201; § 15.02, at 15–5–6; § 15.26 (3d ed.1992). Judge Andersen recognized this very principal in the decision granting certification of the Plaintiff Class. In contesting the certification of the Class, Defendants argued that Beale was an inadequate class representative because he had conflicts of interest arising out of, *inter alia*, the claim against him asserted by one of EdgeMark's subsidiaries which would cause him to "have a natural inclination to favor his claims over those of the putative class members." *Beale v. EdgeMark Financial Corp.*, 164 F.R.D. 649, 651 (N.D.Ill.1995). However, Judge Andersen specifically noted that the Court would have to approve any settlement and would therefore insure that Beale did not shirk his duties as class representative, even if carrying out his fiduciary responsibilities meant that his individual claim would suffer. *Beale*, 164 F.R.D. at 651. Thus, Defendants were on notice long ago that any settlement would have to be brought before either Judge Andersen or this Court for review and approval.

Defendants contend that the only limitation on a defendant's freedom to settle with

individual class members is that the settlement may not impair the substantive rights of non-settling class members. However, what this argument ignores is that, without judicial review, there is no safeguard to ensure that the settlement does not impair the rights of the remaining class members. Whether the settlement has an impact on the rights of the remaining class members is a determination that must be made by the Court, not by the parties to the settlement.

Additionally, Defendants argue that Rule 23(e) has no application in this case because the rule applies only to the settlement of the class action in its entirety, but not to the settlement of individual claims. In support of this contention, Defendants cite several cases, including *In re General Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106, 1138–40 (7th Cir.), *cert. denied*, 444 U.S. 870, 100 S.Ct. 146, 62 L.Ed.2d 95 (1979); *Weight Watchers of Philadelphia, Inc. v. Weight Watchers Int'l*, 455 F.2d 770, 774–75 (2d Cir.1972); *Rockler & Co., Inc. v. Minneapolis Shareholders Co.*, 425 F.Supp. 145, 150 (D.Minn.1977) and *Chrapliwy v. Uniroyal, Inc.*, 71 F.R.D. 461, 464 (N.D.Ind.1976). However, all of these cases are distinguishable in so far as none of them address the issue presented by this case: namely, whether the settlement of a class representative's claims after certification is subject to the provisions of Rule 23(e).

While dicta in some of these cases may stand for the proposition that an absent member of the plaintiff class may settle his individual claims without court approval, there are significant differences between absent members of the class and the named plaintiff which dictate a different result when the class representative is the party who has settled. Specifically, as we have already discussed, the class representative voluntarily

---

control over any settlement with the named parties. 582 F.2d at 1306.

**6.** Defendants argue that the language and holding from *Shelton* are applicable only to the pre-certification settlement of the named plaintiff's claims (*see Shelton* for a discussion of the special concerns that arise in the pre-certification context). However, while the settlement at issue in *Shelton* arose in the pre-certification stages, the court specifically acknowledged that the abuses and issues which triggered its concern for the

preservation of the absent member's interests could and do arise in both the pre-certification and post-certification contexts. 582 F.2d at 1306. Specifically, the court stated "the abuse identified in *Cohen* (*i.e.* the named plaintiff's use of the class action procedure for his own benefit, to the detriment of the remaining class members) can arise at any point after an action has been filed as a class action. It may arise as well in the pre-certification stage as after certification." *Id.*

assumes fiduciary duties to the class at large which preclude him from doing anything that would prejudice the claims of those whom he has elected to represent. Additionally, while settlement with any individual member of the absent plaintiff class does not present any risk to the ongoing viability of the class action, without the class representative, the class action may be subject to dismissal if a suitable replacement is not found.[7] *See Shelton,* 582 F.2d at 1305. Because of these critical differences, it is essential that the Court review any settlement with the named plaintiff to ensure 1) that the class representative's settlement will not prejudice or compromise the claims of the remaining class members, 2) that the class representative has not abused his role to further his own self interests and 3) that the loss of the class representative will not result in dismissal of the class suit.

■ "Rule 23(e) was designed to prevent [ ] settlements by the named plaintiffs which could frustrate the interests of the absent class members." NEWBERG ON CLASS ACTIONS, § 15.26 at 15–79. Here, the very interests Rule 23(e) was enacted to protect are at stake and thus, compel the conclusion, that by failing to submit the settlement to the Court for review prior to execution, the Defendants have violated Rule 23(e).

■ Defendants next argue that, even if the settlement was subject to review under Rule 23(e), in order to trigger such review, the Plaintiffs must show that the settlement compromised their right to prosecute their claims. Defendants contend that here, Plaintiffs have shown, at most, mere inconvenience as a result of the settlement, and thus, there is no need for judicial review. However, under Rule 23(e), review is automatic and, it is the settlement's proponents who bear the burden of demonstrating its fairness, without the benefit of any presumptions to aid in the meeting of this burden. *Gautreaux v. Pierce,* 690 F.2d 616, 630–31 (7th

Cir.1982), *aff'g,* 523 F.Supp. 665 (N.D.Ill. 1981); *Anderson v. Torrington Co.,* 755 F.Supp. 834, 838 (N.D.Ind.1991). Thus, because the Court has concluded that the settlement should have been submitted prior to execution for review and approval under Rule 23(e), the Defendants, as the proponents of the settlement, bear the burden of showing that the settlement was fair and not prejudicial to the remaining class plaintiffs.

Having concluded that the Defendants' conduct violated Rule 23, the Court next turns to an analysis of whether there was a violation of Rule 4.2 of the ILLINOIS RULES OF PROFESSIONAL CONDUCT.

2. *The Defendants Violated Rule 4.2 of the ILLINOIS RULES OF PROFESSIONAL CONDUCT.*

■ The Plaintiffs next allege that, by negotiating a settlement with Beale without the permission of Reuben Hedlund, who is class counsel in this case, Attorney Gravelyn violated Rule 4.2 of the ILLINIOS RULES OF PROFESSIONAL CONDUCT. The version of Rule 4.2[8] in force in Illinois and the United States District Court for the Northern District of Illinois provides:

During the course of representing a client a lawyer shall not communicate on the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter unless the first lawyer has obtained the prior consent of the lawyer representing such other party or as may otherwise be authorized by law.

ILLINOIS CODE OF PROFESSIONAL CONDUCT, Rule 4.2 (1997). Plaintiffs contend that Attorney Gravelyn was well aware of the fact that Hedlund was class counsel when he began negotiations with Attorney Carroll. Nevertheless, Plaintiffs contend that, without permission from Attorney Hedlund, Attorney Gravelyn proceeded to conduct settlement

---

7. In this case, the settlement provided for a reasonable time for class counsel to find a suitable replacement for Beale as the class representative and such a replacement has been obtained. Thus, the loss of Beale as the class representative did not lead to the dismissal of the class action in this case. However, this fortuity does not lessen

the need for court review and approval of the class representative's settlement as a general proposition.

8. Rule 4.2 is also frequently referred to as the "anti-contact rule."

negotiations with Attorney Carroll which ultimately resulted in the settlement of all of the claims between Beale and the Defendants. This conduct, Plaintiffs claim, violated the letter and the spirit of Rule 4.2. After reviewing the interests Rule 4.2 was intended to serve, we agree.

 "Once a class has been certified, the [ethical] rules governing communications apply as though each class member is a client of class counsel. Under accepted ethical principals, defendants and their attorneys may communicate on matters regarding the litigation with class members who have not opted out, **but only through class counsel.**" MANUAL FOR COMPLEX LITIGATION, § 30.2 at 234 (3d ed.1995)(emphasis added); *see also* NEWBERG ON CLASS ACTIONS, § 15.18 at 15–49 (3d ed.1992). It is undisputed that Beale's only attorney of record in the class action at the time of the settlement negotiations was Attorney Hedlund and that Beale's claims in the class action were one of the subjects addressed by the settlement negotiations. It is also undisputed that the settlement negotiations were not conducted through Attorney Hedlund.

 In spite of the above, Defendants contend that Rule 4.2 was not violated because defense counsel never communicated directly with Beale and thus, never communicated with a party, as proscribed by the "anti-contact" rule. This argument lacks merit. While Gravelyn did not communicate directly with Beale, Gravelyn's communica-

tions were no doubt reconveyed to Beale through Attorney Carroll. Put another way, Attorney Carroll was the means of communicating to Beale. The Court finds that Gravelyn's indirect communication with Beale through Attorney Carroll implicated many of the same concerns and posed many of the same risks that would have been present if Gravelyn had communicated with Beale directly. Thus, the Court concludes that the distinction between the two methods of communication is insignificant and does not remove the contact from the ambit of Rule 4.2.

In attempting to refute the above conclusion, Defendants contend that the presence of Attorney Carroll militates in favor of a finding that Rule 4.2 was not violated because Carroll was Beale's chosen counsel for purposes of the negotiation and, since Carroll was counsel of record in the MNB litigation and additionally, had asserted claims on Beale's behalf in state court that were similar to the federal securities claims at issue in the class suit, he was fully capable of protecting Beale's interest, thereby serving the purposes of Rule 4.2.[9]

 The Court first notes that, although Beale may well have elected to have Carroll represent him during the settlement negotiations and may have thereby consented to Gravelyn's communications, his consent to the contact does not mitigate or remove the ethical taint that results from such a communication. *Faison v. Thornton,* 863 F.Supp.

9. In support of this proposition, Defendants cite to *Cochran v. Ernst & Young,* 758 F.Supp. 1548 (E.D.Mich.1991). In *Cochran,* the plaintiff, who filed actions in both state and federal court, was represented by different counsel in the state and federal proceedings. 758 F.Supp. at 1550–51. The court noted that the plaintiff was the sole complainant for purposes of the federal proceedings because, although both the federal and state claims were filed as a class action, the federal claim was never certified. *Id.* at 1550.

Accompanied only by his state court counsel, plaintiff met with counsel for the defense and settled all of the pending actions. *Id.* at 1551. Plaintiff later sought to have the settlement set aside based, in part, on his contention that he was not represented by his counsel of record in the federal case. *Id.* at 1556. Disregarding this argument, the court refused to set aside the settlement based on the conclusions that plaintiff was represented by the counsel of his choice at

the time of the settlement, that the plaintiff had time to consult and did consult with his federal counsel before signing the settlement agreement, and that, even if plaintiff was unrepresented, the settlement agreement was not thereby invalidated under Michigan law. *Id.*

The *Cochran* case is distinguishable from the instant case on numerous grounds, the most notable distinctions being that the case (1) did not address the violation of Rule 4.2 by opposing counsel and thus, did not present the same issue raised by the instant litigation; (2) did not involve a certified class action and thus did not implicate all of the unique concerns presented by such an action and (3) involved a situation wherein the plaintiff had time to and did consult with federal counsel who gave input and advice with respect to the settlement agreement—a situation which was not present in the instant case. Thus, the *Cochran* case is inapposite and the Defendants reliance on this case is misplaced.

1204, 1213 (D.Nev.1993); ABA/BNA LAW-YER'S MANUAL ON PROFESSIONAL CONDUCT at § 71:302 (June 22, 1988). To the contrary, since one of the obvious purposes of Rule 4.2 is to prevent opposing counsel from taking advantage of the other party who is unrepresented from the standpoint of the issue being negotiated, Beale's unrepresented consent is one of the very things the rule attempts to prevent. Thus, it is only the consent of the adverse party's counsel that allows an attorney to communicate with the adverse party with ethical impunity. *Faison*, 863 F.Supp. at 1213; ABA/BNA LAWYER'S MANUAL ON PROFESSIONAL CONDUCT at § 71:302.

Further, while Attorney Carroll was Beale's counsel of record for purposes of the MNB litigation and was therefore capable of protecting Beale's interests as they related to that litigation, he was presumably not sufficiently knowledgeable about the class litigation to adequately protect the interests of both Beale, as the class representative, and the other Class Plaintiffs. This conclusion is borne out by the aftermath of the settlement agreement. As a result of that agreement, Beale has breached his fiduciary obligations to the Class by acting to their detriment in obtaining a favorable resolution of his individual claims. Thus, it is clear that the presence of Carroll did not and could not adequately protect either Beale's interest or the interests of the absent class members who have been prejudiced by this agreement.

 An examination of the underlying purposes behind Rule 4.2 provides further insight as to why the conduct of Gravelyn violated the "anti-contact" rule. Rule 4.2 was designed primarily to preserve the integrity of the attorney client-relationship.[10] *In re Air Crash Disaster Near Roselawn, Indiana on October 31, 1994*, 909 F.Supp. 1116, 1120 (N.D.Ill.1995); *Brown v. St. Joseph County*, 148 F.R.D. 246, 249 (N.D.Ind. 1993). In this case, the contact between Gravelyn and Carroll, acting on Beale's be-half, clearly had a negative effect on the attorney-client relationship between Attorney Hedlund and Beale in so far as it has forced Hedlund to withdraw as Beale's counsel in the class action.[11] Carroll's presence did nothing to mitigate or prevent this damage. In light of this consequence and the other factors discussed earlier, the Court concludes that Gravelyn's conduct falls within the scope of Rule 4.2.

Defendants next argue that, even if Gravelyn's actions implicated Rule 4.2, there was no violation because Hedlund acquiesced to the negotiations. Defendants, in essence, contend that Hedlund was aware of the negotiations and did not object or attempt to become involved with or halt the discussions and that this lack of intervention is the equivalent of consent to the communications.

 Contrary to Defendants' contentions, Mr. Hedlund did not consent to the communications because failure to intervene is not equivalent to affirmative consent. Rule 4.2 places the burden of obtaining consent on the attorney who wishes to speak with the adverse party. This Court will not turn the rule on its head and thereby read it to require the represented party's counsel to take active steps toward preventing opposing counsel's communication with his client before a violation of the rule will be deemed to have occurred. It is the individual responsibility of each attorney to ensure that his or her conduct is in compliance with the relevant RULES OF PROFESSIONAL CONDUCT and Defendants cannot seriously contend that, because they were not prevented from violating Rule 4.2, they cannot be held accountable for the unethical nature of their conduct.

In light of the foregoing, the Court concludes that Hedlund did not consent to the communication at issue here. Consequently, Gravelyn's conduct in connection with the settlement of Beale's class claims violated

---

**10.** The rule also serves to protect the party from the over-reaching of opposing counsel who may attempt to win, or worse yet, coerce, ill-considered statements, admissions or agreements from the party. *In re Air Crash Disaster Near Roselawn*, 909 F.Supp. at 1120; *Brown*, 148 F.R.D. at 249.

**11.** Additionally, the communication resulted in an agreement that, as we discussed above, both placed Beale in breach of his fiduciary duties to the class and was prejudicial to the remaining class members.

Rule 4.2 of the Rules of Professional Conduct.[12]

### 3. Sanctions Imposed As a Result of Defendants' Conduct

In seeking sanctions for the above conduct, the Plaintiffs allege that the settlement is detrimental to the Plaintiff Class in that: (1) the settlement has allegedly drastically reduced the Class' potential recovery and the Defendants' potential liability; (2) the Class had been deprived of the opportunity to negotiate and participate in the settlement; (3) the Defendants have refused to produce the NASD letter which was the subject of the Illinois Discovery Petition; (4) the remaining class members could be forced to disproportionately shoulder the burden of attorneys' fees; (5) the Class has lost the class representative with the largest claim and the greatest incentive to prosecute the action; (6) the Class has also lost the source of funding for the litigation as Beale was willing to fund a major portion of the costs; and (7) the conduct of the Defendants has caused significant delay and expense to the Class. Consequently, Plaintiffs seek the following relief: (1) the creation of an escrow fund of $2.4 million, which Plaintiffs allege is equal to the value of Beale's settlement; (2) the production of the NASD letter which was the subject of the state court discovery petition; (3) the advancement of fees and costs associated with the filing of the instant motions, the Plaintiffs' response to the Defendants' motion to disqualify and the ongoing costs of this litigation; and (4) the disqualification of Mr. Gravelyn and his law firm, Warner, Norcross & Judd.

In response, Defendants contend that the Court is not empowered to award such relief. With respect to the creation of an escrow fund and the production of the NASD letter, Defendants contend that the Court would be required to essentially rewrite the settlement agreement in order to grant this relief, something the Court is not entitled to do. Defendants argue that the Court may either approve or disapprove the settlement, but may not impose terms on the parties different from those to which they agreed. Thus, the Defendants assert that the only relief the Court may grant is disapproval of the settlement agreement.

The Defendants further argue that the Court may not award attorneys' fees or costs because neither Rule 23 nor Rule 4.2 provides for such relief. Finally, Defendants assert that disqualification is inappropriate because it is an extreme remedy that is reserved for deliberate violations which corrupt the trial process. Defendants contend that, in this case, any violation of Rule 4.2 would have been entirely unintentional and would present no risk of tainting the trial process because Defendants did not obtain any damaging admissions or other information through the improper communication.

 It is well established that "courts possess the inherent power to protect the orderly administration of justice and to preserve the dignity of the tribunal" and that the "the inherent power of a court to manage its affairs necessarily includes the authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it." *Kleiner v. First National Bank of Atlanta,* 751 F.2d 1193, 1209 (11th Cir.1985) (citations omitted); *Magnus Electronics, Inc. v. Masco Corporation of Indiana,* 871 F.2d 626, 632 (7th Cir.1989); *In re Air Crash Disaster Near Roselawn,* 909 F.Supp. at 1124. Such sanctions may include the award of attorneys' fees and costs, disqualification of counsel, and the imposition of monetary penalties. *Kleiner,* 751 F.2d at 1209 (citations omitted). Thus, the Court is fully empowered to order whatever sanctions it deems just and appropriate in this case.[13]

---

**12.** The Defendants argue that, if Gravelyn's conduct violated Rule 4.2, then Carroll is equally culpable. Without making any comment on the conduct of Attorney Carroll, the Court finds it sufficient to note that Attorney Carroll has not filed an appearance in this case and is thus outside the purview of this Court's jurisdiction.

**13.** While the Defendants are correct in asserting that the Court's authority under Rule 23 only enables the Court to approve or disapprove the settlement agreement, the Court need not redraft the settlement agreement to provide the relief sought.

In ascertaining the appropriate sanctions to impose for the ethical violation committed by Attorney Gravelyn, the Court considers the seriousness of the violation and whether the violation was intentional, in addition to considering the nature and extent of the prejudice to the plaintiff class arising from the violation. *In re Air Crash Disaster Near Roselawn*, 909 F.Supp. at 1124. Because the abuse or misuse of any rule of civil procedure is a violation of the spirit of the rules of professional ethics on the most basic level, NEWBERG ON CLASS ACTIONS, § 15.02 at 15–6, the Court deems it appropriate to consider the same factors mentioned above in deciding what sanctions to impose for Defendants attempt at circumventing the requirements of Rule 23(e).

Assessing the above factors, the Court finds a need for remedial action and therefore concludes that the imposition of sanctions is appropriate here. The violations of Rules 23 and 4.2 were both serious and intentional. With respect to the Defendants' attempt at circumventing this Court's authority under Rule 23, the Court notes first that the Defendants were well aware that any settlement would have to be reviewed and approved by Judge Andersen or by this Court as a result of Judge Andersen's August 1, 1995 Order adopting this Court's May 26, 1995 Report and Recommendation. Further, Defendants were instructed by Mr. Carroll that it would be necessary for the Court to review and approve the settlement offer. Specifically, in a letter dated June 11, 1996, Carroll stated:

> given that the Federal District Court has certified the class, any settlement with Beale on an individual basis will have to be reviewed by the Court, to determine, among other things, whether the dismissal [of the discovery petition] in any way prejudices the unnamed class members. Clearly, the discovery sought in the Discovery Petition has a direct impact on the claims of the class members and it is doubtful that the Federal District Court would approve the settlement with Beale unless the Discovery Petition remains pending.

In response to this letter, the parties deleted the language in the agreement which provided for the dismissal of Beale's state and federal court claims and instead, relied solely on the release language in a clearly deliberate attempt to circumvent this Court's authority and duty to review the settlement agreement. Review by this Court for the purpose of preventing prejudice to the non-settling class members was, thus, deliberately bypassed.

With respect to the Rule 4.2 violation, there is no dispute that Gravelyn was fully aware that Hedlund represented Beale for purposes of both the class action and the state court discovery proceedings. Further, as the initial drafts of the agreement provided for Hedlund's signature, Gravelyn was apparently aware of the fact that it was necessary to get Hedlund's approval of the communication and agreement. However, rather than calling Hedlund and obtaining permission to go ahead with the discussions or, at a minimum, waiting for Hedlund's approval of the settlement, Gravelyn instead opted to execute the agreement in the absence of any approval whatsoever from Hedlund. It is not enough for Gravelyn to now assert that he thought Hedlund had been informed of the negotiations and did not object since he took no steps to prevent them from transpiring. Gravelyn's actions were therefore intentional.

Finally, the Plaintiff class has been prejudiced as a result of this agreement and the conduct of the attorneys for the Defendant in procuring it. The Plaintiffs have been forced to expend time and money in attempting to force the Defendants to turn over the NASD letter that was the subject of the state court discovery proceedings .[14] Additional time and money has been expended in filing these

---

14. The Court notes that, after filing motions in this Court and state court in an attempt to obtain the Defendants' compliance with the order mandating disclosure of the NASD letter, the Defendants finally turned the document over on March 17, 1997. The refusal to disclose the letter would have provided an additional basis for finding prejudice to the Plaintiff Class as a result of the settlement, however, the disclosure of the document has mitigated that prejudice and eliminated the need for this Court to order disclosure as one of the sanctions imposed.

motions and responding to the Defendants' motions to disqualify. Finally, potential prejudice adheres in the fact that, because Beale is no longer a party to the suit, there is the possibility that the facts and evidence surrounding his claims may no longer be admissible.

■ In light of the above conclusions, the Court grants in part and denies in part the Plaintiffs' Objections to Settlement and Motion for Sanctions. However, because the settlement agreement is a *fait accompli* in that it has been fully executed and may not now be undone, the Court denies the Plaintiffs' Motion To Vacate and Set Aside. Although it is unable to vacate the settlement, the Court notes that the effect of the settlement agreement on the instant case will be *de minimus* as a result of the sanctions imposed below.

In order to remedy the prejudice caused by the settlement agreement and to deter future wrongdoing, the Court orders the following sanctions:

(1) Attorney Gravelyn is disqualified from further representation of the Defendants in this case. This disqualification does not extend to his firm, Warner, Norcross & Judd;

(2) any facts that would have been relevant and admissible if Beale's claims were not released remain relevant and admissible;

(3) the Defendants shall pay the reasonable attorneys' fees and costs associated with the Plaintiffs' motion to set aside and vacate the release and the Plaintiffs' objections to the settlement and motion for sanctions;

(4) finally, in the event of a judgment in Plaintiffs favor, the Defendants shall pay, as part of the judgment, Beale's pro-rata portion of the attorneys' fees in order to ensure that the remaining members of the Plaintiff Class are not forced to disproportionately shoulder the burden of attorneys' fees.

**B. Defendants' Motion To Disqualify Reuben Hedlund and Hedlund, Hanley & John From Future Representation of the Plaintiff Class**

In response to the Plaintiffs' motion to set aside and vacate the release of Beale's claims, Defendants brought a motion to disqualify Reuben Hedlund and his firm on the premise that, in seeking to set aside part of the settlement, Hedlund had adopted a position contrary to the interests of his then client, Joseph S. Beale. Defendants contend that in so doing, Attorney Hedlund violated the ethical prescripts of Rule 1.7 and/or Rule 1.9, and, pursuant to this Court's inherent power to supervise attorneys practicing before it, Hedlund must therefore be disqualified.

■ Rule 1.7, which governs attorney conflicts with existing clients, prevents an attorney from representing a client if the representation would be directly adverse to another client unless the attorney believes the representation will not adversely affect the relationship with the other client and both clients consent.[15] ILLINOIS RULES OF PROFESSIONAL CONDUCT, Rule 1.7 (1997). Rule 1.9 governs conflicts of interest with former clients and provides that an attorney who formerly represented a client in a matter may not represent another person in the same or a substantially related matter in

**15.** Rule 1.7 provides:
(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
(2) each client consents after disclosure.
(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and
(2) the client consents after disclosure,
(c) When representation of multiple clients in a single matter is undertake, the disclosure shall include explanation of the implications of the common representation and the advantages and risks involved.
ILLINOIS RULES OF PROFESSIONAL CONDUCT, Rule 1.7 (1997).

which that person's interests are materially adverse to the interests of the former client, unless the former client consents after disclosure.[16] ILLINOIS RULES OF PROFESSIONAL CONDUCT, Rule 1.9 (1997).

Before we advance any further, it is necessary to determine, which of the above two rules would apply to the case at bar. In the instant case, Hedlund has filed and this Court has granted his motion to withdraw as counsel for Beale effective January 7, 1997.[17] However, the motion to set aside and vacate the release of Beale's claims was filed on December 20, 1996. Consequently, because Hedlund was Beale's attorney of record at the time he allegedly adopted a position which was adverse to Beale's interests, the Court concludes that Rule 1.7 is the relevant rule for the purposes of analyzing this motion.[18]

Plaintiffs' first oppose Defendants' motion to disqualify on the grounds that the Defendants lack standing to bring this motion. We agree. The Court notes that it is only the Defendants in this case who seek Hedlund's disqualification. No other class members have joined in Defendants' motion.

The official comment to Rule 1.7 provides:

[r]esolving questions of conflicts of interest is primarily the responsibility of the lawyer undertaking the representation. In litigation, a court may raise the question where there is reason to infer that the lawyer has neglected the responsibility.... Where the conflict is such as to clearly call in question

the fair or efficient administration of justice, opposing counsel may properly raise the question. Such an objection should be viewed with caution, however, for it can be misused as a technique for harassment.

"Thus, absent evidence clearly calling into question the fair or efficient administration of justice, a party has no standing to seek disqualification of opposing counsel." *In re Sandahl,* 980 F.2d 1118, 1121 (7th Cir.1992); *Tizes v. Curico,* 1997 WL 116797 (N.D.Ill. 1997); *Thomas and Betts Corp. v. Panduit Corp.,* 1995 WL 319635, at *2 (N.D.Ill.1995). Here, there is no evidence calling into question the fair or efficient administration of justice. Any conflict of interest that existed in this case, assuming for the sake of argument that one did exist, was created by Defendants' wrongful and unethical conduct in procuring a settlement in derogation of this Court's authority under Rule 23 and the ethical considerations of Rule 4.2. This action necessarily precipitated Hedlund's response, which, it is claimed, shows Hedlund's conflict. This Court has no intention of watching Defense counsel transform its own misconduct into a ground for asserting that it now has standing to seek the disqualification of Attorney Hedlund.

Furthermore, if any conflict is present here, it is minimal in so far as Hedlund did not seek to vacate the entire settlement, but rather, sought only to vacate the release of Beale's state and federal court claims. Since the settlement agreement has already been fully executed and Beale has already re-

---

16. Rule 1.9 provides:
 (a) A lawyer who has formerly represented a client in a matter shall not thereafter:
 (1) represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client, unless the former client consents after disclosure; or
 (2) use information relating to the representation to the disadvantage of the former client, unless:
 (A) such use is permitted by Rule 1.6; or
 (B) the information has become generally known.
ILLINOIS RULES OF PROFESSIONAL CONDUCT, Rule 1.9 (1997).

17. This motion was first filed in August of 1996, but was denied without prejudice due to coun-

sel's failure to serve the motion on Beale. The motion was not renewed until December of 1996.

18. The Court notes that even if Hedlund had withdrawn prior to taking the position alleged to have created the conflict, Rule 1.7 would still apply. "[A] present-client conflict may not be transformed into a former-client conflict simply by withdrawing from representation of the existing client. A premature withdrawal violates the lawyer's obligation of loyalty to the existing client." RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 213 cmt. c. Thus, "withdrawal is [only] effective to render a representation 'former' ... if it occurs at a point that [both] the client and lawyer contemplated as the end of the representation." *Id.*

ceived the full benefit of the agreement, even if the Court agreed to vacate Beale's releases, it is hard to see how such an action would be adverse to Beale's interests in any material respect. Furthermore, as Hedlund no longer represents Beale, if a conflict existed, it is highly unlikely to be repeated. Finally, if a conflict did exist, it did not impair the progress of the case, nor prejudice the Plaintiff Class. Consequently, the Court sees no basis for concluding that the fair and efficient administration of justice has, in any way, been harmed and the Court therefore concludes that the Defendants lack standing to seek Hedlund's disqualification. On this basis, the Defendants' motion to disqualify Hedlund and his firm is denied.

■ Additionally, even assuming the Defendants had standing to bring the instant motion, the Court concludes that no conflict exists. The Defendants seek to import wholesale into. this class action the ethical precepts applicable to individual actions. However, the class action device was created to serve unique purposes and protect unique interests. Thus, the unqualified application of the ethical principals designed for the individual action, without adaptation to the unique nature of the class action procedure, compromises both the ethical standards and the effectiveness of the class litigation. NEWBERG ON CLASS ACTIONS, § 15.01 (3d ed.1992).

■ One of the factors unique to class litigation is the existence of a class, rather than individual, client. Stated another way, in a class suit, class counsel's client is the group which comprises the class, rather than any individual class member. *See Parker v. Anderson*, 667 F.2d 1204, 1211 (5th Cir.1982)

(stating "the compelling obligation of class counsel in class action litigation is to the group which makes up the class.").

■ Because the client in a class action consists of numerous class members, in addition to the class representatives, and because the class itself often speaks in several voices, all that can be expected of class counsel is that he seek to protect the best interests of the class as a whole. *Parker*, 667 F.2d at 1211; *Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978). This duty may require class counsel to take actions which are in derogation of the express desires and contrary to the best interest of the class representatives in order to protect the interests of the plaintiff class. *See Parker*, 667 F.2d at 1211; *Maywalt v. Parker & Parsley Petroleum Co.*, 155 F.R.D. 494 (S.D.N.Y.1994); *aff'd* 67 F.3d 1072 (2d Cir.1995).[19]

That is precisely what has happened in the instant case. As a result of the Defendants' end run around this Court's administrative authority, Hedlund was faced with a settlement prejudicial to the class members which would never have been presented to this Court for review. In order to protect the best interests of the class, to whom Hedlund owed his primary responsibility, he took the steps necessary to mitigate the prejudice caused by the settlement. While those actions may have been contrary to Beale's desires and may have arguably even been contrary to Beale's interests,[20] they do not provide a basis for disqualifying Attorney Hedlund, for Hedlund was simply doing what his duty to the class required of him in light of the improperly procured, prejudicial

19. Defendants contend that these cases are inapplicable to the instant case because neither of them addresses whether the conduct at issue in those cases violated Rule 1.7. While it is true that neither case analyzes the conduct of class counsel in the context of Rule 1.7, we believe that the underlying principals expressed in those cases clearly address the interests sought to be advanced under the aegis of Rule 1.7 and therefore, provide persuasive authority in the case at bar. This is especially true in light of the dearth of case law addressing the application of Rule 1.7 to the factual context now before this Court.

20. As discussed earlier, the Court finds it difficult to see how Beale's interests could be adversely effected by the relief sought by Hedlund in the motion to set aside and vacate. Even if the Court were to have granted such relief, which it did not, as discussed in the analysis of the Plaintiffs' motions, Beale would still enjoy the full benefit of the settlement agreement because there is no way to undo what has already been done pursuant to the execution of that agreement.

settlement of Beale's claims.[21]

Thus, for all of the foregoing reasons, the Court finds that no conflict exists and therefore, denies Defendants' motion to disqualify Hedlund on this basis as well.

### III. Conclusion

To briefly summarize the outcome of the three motions pending before the Court:

(1) Plaintiffs' Objections To the Settlement and Motion For Sanctions is granted in part and denied in part.

(2) Plaintiffs' Motion To Set Aside and Vacate the Release of Beale's Claims In This Action and the Related Circuit Court of Cook County Action is denied.

(3) Defendants' Motion To Disqualify Reuben Hedlund and Hedlund, Hanley & John from Further Representation of the Plaintiff Class is denied.

---

21. This situation is really no different than that presented when the class representatives object to a settlement that class counsel advocates as being in the best interests of the class at large. Courts presented with such a scenario have not found that a conflict exists which creates a basis for the disqualification of class counsel. *See Maywalt*, 155 F.R.D. at 496–97. Rather, they have noted that class counsel's duty is to protect and advance the interests of the class as a whole, without regard to the special interests and desires of the named plaintiffs. *Id.*