In re MARRIAGE OF LINDA S. DALL, Petitioner-Appellee, and GERALD H. DALL, Respondent-Appellant (Richard W. Sterling, Appellant).

Fifth District No. 5—89—0777

Opinion filed March 28, 1991.

86

David P. List, Eugene A. Schoon, and John M. Breen, all of Sidley & Austin, of Chicago, for appellant Richard Sterling.

Michael J. Costello, of Immel, Zelle, Ogren, McClain & Costello, of Springfield, for appellant Gerald Dall.

Eric M. Rhein and Edward J. Blake, Jr., P.C., of Belleville, for appellee.

JUSTICE LEWIS delivered the opinion of the court:

This appeal arises out of an action for the dissolution of the marriage of the petitioner, Linda S. Dall, and the respondent, Gerald H. Dall. During the pendency of an earlier appeal in this cause (*In re Marriage of Dall* (1989), 191 Ill. App. 3d 652, 548 N.E.2d 109), the trial court entered an order on October 17, 1989, finding the respondent in willful, indirect, civil contempt of court for failure to comply with its order of child support from and after May 15, 1989. In the order of October 17, 1989, the trial court, *inter alia*, denied the respondent's motion to modify child support filed on May 16, 1989, and provided for payment of arrearage of child support from June 1, 1989, through October 15, 1989. The respondent appeals from this judgment, presenting two issues for review: (1) whether the failure to reduce child support based on respondent's change of circumstances was an

abuse of discretion and (2) whether the determination that respondent was guilty of contempt for failure to pay child support was an abuse of discretion or against the manifest weight of the evidence.

In an earlier order entered on March 3, 1989, the trial court held, *inter alia*, "[t]hat the [respondent's] attorney, Richard W. Sterling, be, and the same is hereby, publicly censured for engaging in conduct involving misrepresentation and engaging in conduct that is prejudicial to the administration of justice." In its order entered on October 17, 1989, the trial court denied the motion of attorney Sterling to reconsider and to vacate that part of its order of March 3, 1989, in which he was censured. Mr. Sterling appeals, raising three issues for review: (1) whether the trial court had jurisdiction to discipline him or whether the supreme court of Illinois alone has jurisdiction to discipline attorneys licensed to practice law in Illinois; (2) whether the evidence is clear and convincing that Mr. Sterling deliberately misled the trial court or whether the trial court erroneously construed what Mr. Sterling said; and (3) whether the advice given by Mr. Sterling to his client "that a timely post[-]trial motion filed pursuant to Ill. Rev. Stat.[,] ch. 110, par. 2—1203 stays the execution of a child custody award" was erroneous and, if so, whether it was so erroneous as to warrant public censure.

We turn first to the issue presented for our review by the respondent's attorney, Mr. Sterling, pertaining to the trial court's jurisdiction to censure him. The censure of Mr. Sterling by the trial court arose in the context of a hearing conducted on February 23, 1989, on another petition of the petitioner for contempt. The respondent had refused to deliver custody of the parties' minor child to the petitioner on November 20, 1987, as ordered by the trial court, fearing, he testified, for the child's safety in the presence of the petitioner's adult sons from a prior marriage. On November 20, 1987, he had filed a post-trial motion requesting the court to set aside its order granting custody of the minor child to petitioner, in part because of this alleged treatment of the minor. The respondent indicated that he had retained physical custody of the child in reliance upon the advice of counsel. The respondent made tape recordings of statements of the minor child concerning his treatment by the petitioner's adult sons. Information pertaining to the date of the making of the tape recordings by the respondent was central to the trial court's imposition of censure upon Mr. Sterling.

In its order of March 3, 1989, the trial court found in relevant part as follows:

> "The [respondent's] argument that he relied on his attorney's advice is specious. The attorney's position that the 'Post[-]Trial

Motion' filed 11—20—87 created an automatic stay of the custody award under Ill. Rev. Stat., [c]h. 110, para. 2—1203(b) is so grossly in error that no competent attorney could seriously rely on such a position. The attorney is the agent of the party and an attorney's acts taken within the scope of his employment, as here, bind the party. This Court expresses no opinion as to whether the [respondent] has a cause of action over against attorney Sterling for legal malpractice. Nor does this court elect to discipline attorney Sterling pursuant to Ill. Rev. Stat., [c]h. 110A, para. 63[([B[)](3) [Supreme Court Rule 63(B)(3)] and Rule 1—102 [Rule 1—102 of the Code of Professional Responsibility] for this misconduct and his misconduct in misrepresenting the date upon which he heard the tapes (Mother's Exhibit No. 1 of 2—23—87) except to find here, publicly, that both acts individually constituted a violation of Ill. Rev. Stat., [c]h. 110A, Rule 1—102(4) and (5) for which attorney Sterling is hereby censured."

At the hearing conducted on September 21, 1989, concerning, among other matters, Mr. Sterling's motion to reconsider that part of the order of March 3, 1989, censuring him, the trial court stated as follows:

"I do have one matter I want to make of record at this time in response to the arguments submitted, particularly where both counsel have stated their view that in the event that the Court was correct in the finding as to Mr. Sterling that the sanction was not severe. That was done in view of the fact that these two parties have engaged in one of the more hotly contested domestic relation matters that I have had the opportunity to hear, due further to the fact that Mr. Sterling and Mr. Rhein have found it difficult to deal with each other in this matter as members of the bar, and due to the rather extreme pressures that were on Mr. Dall and Mr. Sterling in the face of a contempt proceeding that contained the potential, at least, for the most serious of sanctions as to the father's position.

I would like to note that I did not order a report of that proceeding be prepared and forwarded to the Attorneys [sic] Registration and Disciplinary Commission, which some authorities have determined under the Code of Judicial Conduct is the primary obligation where a court finds misconduct occurring. I adopted the minority view that a court may engage in some discipline less than that when I entered the sanction that I did. I want the record to be clear in that regard, in the face of those arguments."

In its order of October 17, 1989, the trial court expressly found that in its earlier order "attorney Sterling was found to be in violation of the attorney disciplinary rules of the Illinois Supreme Court."

■■■ In part B of article VII, pertaining to registration and discipline of attorneys, of the Illinois Supreme Court Rules, Supreme Court Rule 771 (107 Ill. 2d R. 771) provided, at the time relevant herein, as follows concerning "Types of Discipline":

"Conduct of attorneys which violates the Code of Professional Responsibility contained in article VIII of these rules or which tends to defeat the administration of justice or to bring the courts or the legal profession into disrepute shall be grounds for discipline by the court. Discipline of attorneys may be:

(a) disbarment;

(b) disbarment on consent;

(c) suspension for a specified period and until further order of court;

(d) suspension for a specified period of time;

(e) suspension until further order of the court;

(f) suspension for a specified period of time or until further order of the court with probation; or

(g) *censure*." (Emphasis added.)

Disciplinary Rule 1—102 of the Code of Professional Responsibility (107 Ill. 2d R. 1—102, repealed eff. Aug. 1, 1990; now see Illinois Rules of Professional Conduct, 134 Ill. 2d R. 1.1 *et seq.*), contained in article VIII of the Illinois Supreme Court Rules, stated in pertinent part:

"(a) A lawyer shall not
\* \* \*

(4) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation; or,

(5) engage in conduct that is prejudicial to the administration of justice."

Supreme Court Rule 63(B)(3) (107 Ill. 2d R. 63(B)(3)) provides that "[a] judge having knowledge of a violation of these canons on the part of a judge or a violation of Rule 1—102 of the Code of Professional Responsibility on the part of a lawyer shall take or initiate appropriate disciplinary measures."

■■ The power to prescribe rules governing attorney conduct and to discipline attorneys for violating those rules rests solely in the supreme court of Illinois. (*People ex rel. Brazen v. Finley* (1988), 119 Ill. 2d 485, 519 N.E.2d 898; *Kilpatrick v. First Church of the Nazarene* (1989), 182 Ill. App. 3d 461, 538 N.E.2d 136.) Consistent with this exclusive power, the supreme court, as it stated in *Brazen,*

"has adopted a Code of Professional Responsibility (107 Ill. 2d R. 1—101 *et seq.*); and appointed an Attorney Registration and Disciplinary Commission (ARDC) (107 Ill. 2d R. 751), along with an Administrator (107 Ill. 2d R. 752) to supervise '[t]he registration of, and disciplinary proceedings affecting, members of the Illinois bar' (107 Ill. 2d R. 751). The court has further created a procedural scheme to enhance the ARDC in performing its duties, including inquiry, hearing and review boards. (107 Ill. 2d R. 753.) The court has also provided by rule for the kind of discipline which it may implement for violation of provisions of the Code of Professional Responsibility. (107 Ill. 2d R. 771.) This court, through the use of its exclusive judicial power to prescribe rules governing attorney conduct, and to discipline attorneys for violating those rules, has created a comprehensive program to regulate attorneys and punish their misconduct." 119 Ill. 2d at 494, 519 N.E.2d at 902.

The court in *Ettinger v. Rolewick* (1986), 140 Ill. App. 3d 295, 488 N.E.2d 598, noted that the supreme court has never deviated from the rule that it has original and inherent jurisdiction to regulate the practice of law. As was stated in *Reed Yates Farms, Inc. v. Yates* (1988), 172 Ill. App. 3d 519, 526 N.E.2d 1115, the supreme court has exclusive and plenary jurisdiction over attorney disciplinary matters, and courts other than the supreme court may adjudicate matters touching on attorney discipline only when acting as agents of the supreme court upon direct order of that court. Attorney disciplinary proceedings, as the court in *Yates* said, are conducted by the Attorney Registration and Disciplinary Commission completely separate and apart from the judicial proceedings in which the alleged attorney's misconduct occurred. The disciplining of attorneys is in the nature of an original proceeding in which the Attorney Registration and Disciplinary Commission and its various officers, as well as the inquiry board, the hearing panel, and the review board, serve as agents of the supreme court in administering the disciplinary functions that have been delegated to them. (*Schnack v. Crumley* (1982), 103 Ill. App. 3d 1000, 431 N.E.2d 1364.) Any sanctions based on alleged professional misconduct must be addressed to the Attorney Registration and Disciplinary Commission, which is vested with the authority to consider such matters and is the proper forum for such actions. *Schnack*, 103 Ill. App. 3d 1000, 431 N.E.2d 1364; see *Richard/Allen/Winter, Ltd. v. Waldorf* (1987), 156 Ill. App. 3d 717, 509 N.E.2d 1078; *Britt v. Federal Land Bank Association* (1987), 153 Ill. App. 3d 605, 505 N.E.2d 387.

Recently, in *Freeman v. Myers* (1989), 191 Ill. App. 3d 223, 547 N.E.2d 586, the trial court had ordered a mistrial, citing the breach by counsel of an order pertaining to a motion *in limine*, and had assessed attorney fees against counsel, citing Supreme Court Rule 63 (107 Ill. 2d R. 63) and Rule 1—102 of the Code of Professional Responsibility (107 Ill. 2d R. 1—102) in support of its decision. Upon review the court reversed the judgment of the trial court, observing that

> "[t]he trial court here cited portions of Supreme Court Rule 63 and Rule 1—102 of the Code of Professional Responsibility as supporting its action of imposing attorney fees. However, these provisions do not grant the trial court such authority. Rule 63 addresses judicial duties and provides a judge should maintain order and decorum in proceedings before him. Rule 1—102 pertains to attorney misconduct and provides a lawyer shall not engage in conduct prejudicial to the administration of justice. These provisions provide for disciplinary measures to be taken by the Attorney Registration and Disciplinary Commission and do not provide for the trial court to order its own independent sanctions." 191 Ill. App. 3d at 227, 547 N.E.2d at 589.

Similarly, in the instant case, the trial court "elect[ed] to discipline attorney Sterling pursuant to" Supreme Court Rule 63(B)(3) and Rule 1—102 of the Code of Professional Responsibility. For his "misconduct" the trial court "censured" Mr. Sterling. The trial court may not do so, censure being a form of discipline set forth in Supreme Court Rule 771 for an attorney's conduct in violation of the Code of Professional Responsibility. The power to discipline an attorney for such a violation rests solely in the supreme court. There is, of course, no suggestion that the trial court was acting as an agent of the supreme court upon direct order of that court. Accordingly, we reverse that part of the judgment of the trial court denying Mr. Sterling's motion to reconsider, and we vacate that part of the trial court's order of March 3, 1989, censuring him. We note that the trial court made no finding of contempt with respect to Mr. Sterling. In light of our disposition with regard to this issue, we need not address either of the other two issues Mr. Sterling presents for review.

We address the first issue raised by the respondent, whether the trial court abused its discretion in denying his motion to modify child support. Respondent stated in his motion to modify child support payments filed on May 16, 1989, that he sought to modify the order of the trial court of August 25, 1988, requiring support payments of $130 on the first and fifteenth of each month. He sought modification because at the time the order for support was entered he was the duly elected

sheriff of Clinton County receiving an annual income of $37,500 but had resigned from that office on April 17, 1989, effective that day; as a consequence, he stated, he was unemployed, without income, ineligible to receive unemployment compensation, and unable to make the child support payments as ordered by the trial court. Respondent sought suspension of the provisions for child support payments to be made by him "until he again becomes employed and a reconsideration of his then earnings are made and a different amount for child support established."

At a hearing conducted on September 21, 1989, concerning this motion, the respondent testified that following his resignation he had no source of income other than retirement income. At the time he resigned, criminal charges were pending against him in Sangamon County, and as a consequence, he said, he had been unable to perform his duties as sheriff. He testified further that the office had not been functioning properly while he was in office with such charges pending against him. He had sought employment with the State of Illinois and the Village of Aviston without success because of the pending criminal charges, which had been pending for "[j]ust a little over a year" at the time of the hearing. On cross-examination he admitted that he had known when he resigned that because of his legal problems he would have "an awful time" obtaining a job in law enforcement. He testified further that he had not been forced to resign and that "[n]o one ever asked me to resign" but that he had done so "for the betterment of the community and the Sheriff's Department." He said that there had "[n]ot really" been pressure on him to resign from the time of his arrest on September 19, 1988, and that the president of the County Board had been "talking" but not to respondent "about how he wanted [respondent] out." The respondent denied having taken a paid leave of absence during the time in question.

In its order entered on October 17, 1989, the trial court found the respondent's obligation of child support current through May 15, 1989, and that he had paid no support since that date. The trial court found further

> "[t]hat the term of all sheriffs in Illinois runs through 11-30-90. Further, that the father for his own personal reasons voluntarily resigned as Sheriff 4-27-89. He has made no significant attempt to seek other employment either before or since that resignation. He has, however, been in receipt of some $7500.00 in loan proceeds, sale proceeds and other receipts in that interim."

The trial court found as well that

"as a matter of law the father was not entitled to voluntarily resign as Sheriff with no prospects of alternative employment and no significant attempts at securing alternative employment. The father had had some differences with members of the County Board over his continued service as Sheriff, but he could not be impeached or otherwise removed from that office except upon a conviction for Official Misconduct. (Ill. Rev. Stat., [c]h. 38, para. 33—3.) And although he faced felony charges in Sangamon County, Illinois (still pending), the evidence here does not show that that case even alleges any charge of Official Misconduct. The Clinton County Sheriff's Office had for months been operating with the Sheriff on a *de facto* paid leave of absence and no evidence has been submitted adequate to establish that this situation could not have continued through the current term, if necessary. On the other hand, the father's conduct throughout these proceedings is rife with examples of an absence of good faith in complying with the property award, custody awards, and child support awards of this Court. This Court finds that the father's voluntary resignation of his employment was not made in good faith but was made to evade his financial obligations to his ex-wife. Finally, in this regard, there is no evidence that the child's financial resources and needs, nor the custodial mother's, have changed since the entry of the Judgment of Dissolution of Marriage on 8-23-89."

 Section 510(a) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1989, ch. 40, par. 510(a)) provides in pertinent part that "the provisions of any judgment respecting maintenance or support may be modified only as to installments accruing subsequent to due notice by the moving party of the filing of the motion for modification and only upon a showing of a substantial change in circumstances." Economic reversals resulting from changes in employment or bad investments may constitute a material change in circumstances sufficient to warrant a modification of a child support order, if made in good faith. (*In re Marriage of Eisenstein* (1988), 172 Ill. App. 3d 264, 526 N.E.2d 496.) While substantial economic reverses resulting from employment or investment are proper circumstances in considering whether support obligations should be reduced or terminated, such changes in economic circumstances must be fortuitous in nature and not the result of deliberate action by the party seeking the reduction. (*In re Marriage of Stephenson* (1983), 121 Ill. App. 3d 698, 460 N.E.2d 1.) Unless good faith is shown, a voluntary termination of employment by a supporting spouse is not considered a material change in circum-

stances sufficient to warrant abatement or modification of support obligations. *In re Marriage of Ebert* (1980), 81 Ill. App. 3d 44, 400 N.E.2d 995.

■■ ■ In his brief the respondent asserts that he "voluntarily resigned in order to promote law enforcement and the orderly administration of the Office of Sheriff because of his pending criminal charges. It was an involuntary resignation because to continue to serve would cripple law enforcement." The adjudication of a *modification of child support* rests within the sound discretion of the trial court, whose decisions in these matters will not be reversed in the absence of an abuse of discretion. (*In re Marriage of Erickson* (1985), 136 Ill. App. 3d 907, 483 N.E.2d 692.) In the instant case, our review of the record reveals that the findings of the trial court concerning respondent's motion to modify child support payments may not be said to be against the manifest weight of the evidence. The trial court expressly found that the respondent's voluntary resignation of his employment was not made in good faith. Thus, the change in his economic circumstances was not fortuitous and did not constitute a material change sufficient to warrant modification of the order of child support. Contrary to the respondent's contentions, the trial court did not abuse its discretion in denying his motion to modify child support payments. Hence, that part of the trial court's order entered on October 17, 1989, denying the respondent's motion to modify child support is affirmed.

Concerning the other issue respondent raises for our review, whether the trial court's determination that he was guilty of contempt for failure to pay child support was an abuse of discretion or against the manifest weight of the evidence, he maintains that his acknowledged failure to pay child support "was not done in contempt, but rather for other reasons, namely, lack of income." In its order of October 17, 1989, the trial court noted that

> "the father unilaterally terminated his child support payments upon voluntarily resigning his employment. He did not make any significant attempt to obtain other employment either before or since that resignation. Nor did he apply any of the some $7500.00 he received between his retirement and this hearing toward this obligation:

>> 'Furthermore, a party may not unilaterally terminate child support payments. ([C]itations omitted.) The modification of such payments is a judicial function; the court's decision to modify the payment of child support is discretionary in nature and only takes effect prospectively. ([C]itations omit-

ted.)' (*In re Marriage of Erickson* (1985), 136 Ill. App. 3d 907, 914, 483 N.E.2d 692.)

The father has failed to meet his burden of proof on these facts that his unilateral termination of the payment of child support upon voluntarily resigning his employment while, in fact, in receipt of thousands of dollars was not in willful, indirect civil contempt of court:

'Evidence of noncompliance with a court order of child support payments makes out a *prima facie* case for indirect, civil contempt. ([C]itations omitted.) The burden then rests on the alleged contemnor to show that his noncompliance was not wilful. ([C]itation omitted.) Whether noncompliance is wilful or with a valid excuse is a question of fact for the trial court.['] (*In re Marriage of Harvey* (1985), 136 Ill. App. 3d 116, 117-118, 483 N.E.2d 397.)

This finding of indirect, civil contempt of court includes, but is not limited to, a finding that the father's failure to comply with the child support order was without cause or justification."

Respondent asserts in his brief that

"[t]he Court indicated that [respondent] received thousands of dollars during the period of alleged contempt, and did not pay child support. It is noted that he borrowed $4,000.00 and sold property to pay IMFR [*sic*] [Illinois Municipal Retirement Fund]. He borrowed monies to live. He had no income. Surely, this was not willful or contemptuous."

▄▄▄▄ Whether a party is guilty of contempt is a question of fact for the trial court, and a reviewing court will not disturb the finding unless it is against the manifest weight of the evidence or the record reflects an abuse of discretion. (*In re Marriage of Logston* (1984), 103 Ill. 2d 266, 469 N.E.2d 167.) The noncompliance with an order to pay maintenance constitutes *prima facie* evidence of contempt. (*Logston*, 103 Ill. 2d 266, 469 N.E.2d 167.) Therefore, once the *prima facie* showing is made, the burden shifts to the defendant, who may then defend by showing that he is unable to pay. (*Logston*, 103 Ill. 2d 266, 469 N.E.2d 167.) To prove this defense, a defendant must show that he neither has money now with which he can pay nor has disposed wrongfully of money or assets with which he might have paid. (*Logston*, 103 Ill. 2d 266, 469 N.E.2d 167.) A clear defense to contempt exists where the failure of a person to obey an order to pay is due to poverty, insolvency, or other misfortune, unless that inability to pay is the result of a wrongful or illegal act. (*In re Marriage of Betts* (1987), 155 Ill. App. 3d 85, 507 N.E.2d 912.) However, the defense of poverty and misfortune

as a valid excuse for nonpayment has been found applicable only in the most extreme cases, notably where a defendant had no money and no way of getting money to meet his support obligations (*Betts*, 155 Ill. App. 3d 85, 507 N.E.2d 912). Further, financial inability to comply with an order must be shown by definite and explicit evidence (*In re Marriage of Chenoweth* (1985), 134 Ill. App. 3d 1015, 481 N.E.2d 765). That burden is not met by testimony of a general nature with regard to financial status. *Chenoweth*, 134 Ill. App. 3d 1015, 481 N.E.2d 765.

■■■ The respondent concedes that he failed to pay child support as ordered by the trial court but maintains that his failure was caused by a "lack of income." However, he failed to show his financial inability to comply with the order by the requisite definite and explicit evidence. The question whether respondent was guilty of contempt was one of fact for the trial court. Our review of the record makes plain that the trial court's finding of willful contempt of court was neither against the manifest weight of the evidence nor an abuse of discretion. Therefore, that part of the trial court's order entered on October 17, 1989, granting the petitioner's petition for contempt, filed on June 14, 1989, and amended on August 3, 1989, is affirmed.

In summary our disposition is as follows: that part of the trial court's order of March 3, 1989, censuring attorney Sterling is vacated; that part of the trial court's order entered on October 17, 1989, denying attorney Sterling's motion to reconsider and to vacate that part of the order of March 3, 1989, censuring him is reversed; that part of the trial court's order entered on October 17, 1989, denying the respondent's motion to modify child support is affirmed; that part of the trial court's order entered on October 17, 1989, granting the petitioner's petition for contempt, filed on June 14, 1989, and amended on August 3, 1989, is affirmed.

Affirmed in part; reversed in part and vacated in part.

WELCH and HOWERTON, JJ., concur.