JOSEPH E. BEALE, Petitioner, v. EDGEMARK FINANCIAL CORPO-RATION, Respondent-Appellee (William B. Blanchard, Petitioner-Appellant).

First District (3rd Division) No. 1—97—2798

---

Opinion filed June 30, 1998.

1000

Paul E. Freehling and Victoria P. Hallock, both of D'Ancona & Pflaum, of Chicago, for appellant.

Reuben L. Hedlund and Pia Norman, both of Hedlund, Hanley & John, of Chicago, for appellee.

JUSTICE GORDON delivered the opinion of the court:

William B. Blanchard, petitioner, appeals from the denial of his petition for sanctions, fees and costs against EdgeMark Financial Corporation (EdgeMark), the respondent, for failure to comply with a discovery order. The trial court denied Blanchard's petition for sanctions and in its order specifically declined to make any findings regarding one of Blanchard's allegations that EdgeMark violated Rule 4.2 of the Illinois Code of Professional Conduct (134 Ill. 2d R. 4.2), stating that it had no jurisdiction or authority to investigate or decide that claim. Petitioner Joseph S. Beale is not party to this appeal, having executed a settlement agreement and release of all of his claims against EdgeMark prior to the filing of the motion for sanctions. Beale was never dismissed as a party to this action. For the reasons discussed below, we affirm.

## BACKGROUND FACTS

The discovery order upon which the instant appeal is premised was rendered pursuant to Beale's action against EdgeMark seeking presuit discovery under Supreme Court Rule 224 (134 Ill. 2d R. 224). Beale, a former shareholder of EdgeMark and the sole Rule 224 petitioner, sought, *inter alia*, the discovery of information EdgeMark provided to the National Association of Securities Dealers, Inc. (NASD), pursuant to a NASD letter dated December 14, 1993. Beale alleged that the NASD letter listed 36 individuals or married couples and asked EdgeMark to identify whether any of those individuals had relationships with any EdgeMark officer, director or representative that would make them privy to information regarding the acquisition of Edgemark common stock by Old Kent Financial Corporation. On June 4, 1994, the trial court granted Beale's petition and ordered EdgeMark to turn over its response to that NASD inquiry. EdgeMark refused and appealed from that order. This court affirmed the trial court on March 29, 1996 (*Beale v. EdgeMark Financial Corp.*, 279 Ill.

App. 3d 242, 664 N.E.2d 302 (1996)), and the Illinois Supreme Court denied leave to appeal on October 2, 1996 (*Beale v. EdgeMark Financial Corp.*, 168 Ill. 2d 582, 671 N.E.2d 726 (1996)).

On October 7, 1996, before the appellate mandate was issued, Beale's counsel, Reuben L. Hedlund, requested by letter that Edge-Mark comply with the trial court's June 4, 1994, discovery order. EdgeMark did not produce the requested material, and on November 7, 1996, Beale, through attorney Hedlund, filed a motion for immediate enforcement. On November 18, 1996, at the hearing on that motion, EdgeMark produced a copy of a settlement agreement and release executed by Beale on June 12, 1996, in which Beale released all of his claims against EdgeMark. The trial court ordered that EdgeMark file a written response to Beale's motion. On December 9, 1996, Edge-Mark filed its memorandum in opposition to Beale's motion for immediate enforcement. In that memorandum, EdgeMark alleged that Beale and Old Kent State Bank, EdgeMark's corporate successor, executed a settlement agreement and general release on June 12, 1996. Edge-Mark alleged that negotiations for that settlement and release were initiated by Paul Carroll, Beale's attorney in an action in which Beale was being sued by Merchandise National Bank, a wholly owned subsidiary of EdgeMark, for default on a loan. EdgeMark argued that Beale could not seek enforcement of the June 4, 1994, discovery order because in the settlement agreement Beale expressly released "all 'rights, claims, or causes of action which were or which could have been the subject of' [Beale's] petition in this litigation."

Attached to EdgeMark's memorandum to the enforcement motion was a copy of the settlement agreement and general releases and a copy of the affidavit of Daniel R. Gravelyn, counsel for Old Kent State Bank, the successor to EdgeMark and Merchandise National Bank of Chicago. The original of that affidavit had been submitted in a pending federal class action lawsuit originally filed by Beale, as class representative, against EdgeMark alleging securities fraud in violation of federal securities laws.[1] In his affidavit, Gravelyn recounted the details of the settlement negotiations between Carroll and himself which he stated were initiated by Carroll. He also stated that it was his belief

---

[1] The federal class action was filed 23 days after Beale filed his state action for presuit discovery. In the federal action, Beale, on behalf of all persons who sold EdgeMark stock in a period prior to EdgeMark's merger with Old Kent Bank, alleged that EdgeMark defrauded him and other investors by failing to publicly disclose its preliminary plans and negotiations for the sale of Edge-Mark. Beale is no longer the class representative in that action. See *Blanchard v. EdgeMark Financial Corp.*, 175 F.R.D. 293 (N.D. Ill. 1997).

that Hedlund, Beale's counsel in the Rule 224 state action and the federal class action, was aware of the pendency of the settlement negotiations. In that regard Gravelyn averred:

"12. At the time I was negotiating the settlement agreement with Attorney Carroll, I believed that Attorney Hedlund was aware of the pendency of the settlement negotiations. ***[D]uring my negotiations with Attorney Carroll, Attorney Carroll told me that, in view of Beale's impending settlement, Attorney Hedlund wished for me to call him to discuss the settlement of the other claims in the class action lawsuit. *** Attorney Carroll subsequently called me with a message from Attorney Hedlund that, in view of Beale's impending settlement, Hedlund's settlement demands would be 'drastically reduced.' Unfortunately, by the time I received this message, Attorney Hedlund was preparing to depart for Italy and there was, in my judgment, insufficient time to conclude settlement discussions with him before he left. ***(I did call Attorney Hedlund on the day I understood he had returned and, at that time, he made no objection to the Beale settlement, no charges of ethical violations and no request for any concessions). Third, Attorney Carroll showed on a transmittal letter to me of June 11, 1996 that a copy of the proposed settlement agreement had been sent to Attorney Hedlund. Fourth, Attorney Carroll indicated to me during settlement discussions that he was communicating with Attorney Hedlund's office.
***

14. Unless Attorney Carroll deceived me, Attorney Hedlund was aware of the pendency of the settlement negotiations, did not object to them, and elected not to participate in them."

On December 23, 1996, Blanchard moved the court to add him as a petitioner in the Rule 224 action. In that motion, Blanchard referred to the language in Beale's settlement agreement which allowed for the substitution of Beale in his Rule 224 presuit discovery action pending in the state court. The motion quoted the relevant language, which provided that Old Kent/EdgeMark "agree[ ] to allow counsel for Beale in the State Court Litigation to seek a substitute plaintiff for Beale. OKB [Old Kent Bank] reserves the right to challenge the substitution." Also on December 23, 1996, Beale, through attorney Hedlund, filed a reply to EdgeMark's memorandum. That reply argued that the enforceability of the June 4, 1994, order was not impaired by the settlement agreement because that agreement had not been properly filed with the court. The reply also argued that the June 4, 1994, order should be enforced because Blanchard, if added as an additional petitioner, would have standing to seek enforcement. Finally, the reply argued that the settlement agreement should not be given effect since

it was obtained in violation of the Rules of Professional Conduct.[2] Hearing on these pleadings was set for March 19, 1997.

At the hearing on March 19, 1997, the attorneys of record for EdgeMark in the Rule 224 proceedings did not appear. Hedlund advised the court that on March 18, 1997, he had received from Edge-Mark the document that was the subject of the June 4, 1994, discovery order. He argued, however, that the matter was not moot because he also had pending a motion to add an additional plaintiff. The trial court noted that there would have been "some problem" in entering judgment on the enforcement motion with Beale as the named plaintiff. The court stated:

"I would think that you needed to substitute that plaintiff as you are allowed to do under the contract. *** And that it then should go ahead and be ordered that the defendant give you those documents which you have requested."

At this point in the hearing, an attorney from the law firm representing EdgeMark appeared. That attorney argued that the matter was moot because the documents had been turned over. The court thereupon questioned Hedlund as to whether he had received the documents, and when Hedlund stated that he had, the court questioned the need for an order concerning the documents. Discussion ensued on that issue as well as the pendency of the motion to add an additional plaintiff. EdgeMark's counsel sought a continuance on the latter motion. Finding that counsel for EdgeMark was remiss in failing to notify the court that it had turned over the documents, the court stated:

---

[2]As will be discussed below, there is some question as to the efficacy of the filing of this pleading by Beale, which was signed by attorney Hedlund. At the time that pleading was filed, Beale, who was the only named petitioner, had signed the settlement agreement, which was beneficial to his interests, and, conceivably, would not have wanted the court to rule that the settlement agreement was ineffective. There is also some question as to Hedlund's authority to file this reply, in view of a possible conflict of interest that existed between Beale and Hedlund, who in actuality sought enforcement of the Rule 224 order to produce so that the document obtained could be used by other EdgeMark shareholders who had pending claims against EdgeMark similar to those formerly held by Beale. We note that Hedlund has withdrawn as counsel for Beale in the federal class action lawsuit due to the conflict that existed between Beale and the other members of the class. Hedlund first filed his motion to withdraw in the federal action in August 1996, well before filing Beale's motion to enforce the Rule 224 discovery order in the state court. The federal motion was dismissed without prejudice due to Hedlund's failure to serve Beale. Hedlund renewed that motion in December 1996, and that motion was granted effective January 7, 1997. See *Blanchard v. EdgeMark Financial Corp.*, 175 F.R.D. 293, 306 (N.D. Ill. 1997).

"I'm going to allow you to go ahead and put an order that this is to be turned over. And not only that, I'm going to allow you an order that the matter of the plaintiff can be substituted. And if counsel for—

MR. HEDLUND: Edgemark.

THE COURT: Edgemark, the defendant, want to come in here and vacate that order, then they can go ahead and file the proper documents.

This is done partly as sanction for impermissible conduct. This is not the way I expect attorneys to practice here."

On April 3, 1997, Blanchard filed the petition for sanctions that is the subject of the instant appeal. In that petition, Blanchard argued, *inter alia*, that EdgeMark violated Supreme Court Rule 219 (134 Ill. 2d R. 219), by refusing to comply with a discovery order by filing a memorandum in opposition to petitioner's motion to enforce a discovery order in order to cause unnecessary delay and increased litigation costs; by failing to file a motion requesting court recognition or enforcement of Beale's settlement agreement; and by delivering the document that was the subject of the discovery proceeding on the eve of the hearing on the motion to enforce the discovery order without informing the court of its compliance. Blanchard also argued that he was entitled to sanctions pursuant to Supreme Court Rule 219(c) (134 Ill. 2d R. 219(c)) because of EdgeMark's "adamant opposition, based on a Settlement Agreement obtained in flagrant violation of the Rules of Professional Conduct ***, to the enforcement of this Court's June 1994 Order when it had exhausted all of its appellate remedies." Blanchard alleged that the settlement agreement was obtained by Edge-Mark in violation of Rule 4.2 of the Illinois Rules of Professional Conduct (134 Ill. 2d R. 4.2) because EdgeMark's counsel negotiated the settlement of Beale's claims without obtaining the consent of counsel representing Beale in the federal class action lawsuit and in the Rule 224 state action for presuit discovery (attorney Hedlund). The motion for sanctions sought an award of $18,075 in attorney fees and $160.96 in costs allegedly incurred in connection with obtaining the enforcement order.

Attached to the motion for sanctions was the affidavit of attorney Hedlund, counsel for Beale and Blanchard in the Rule 224 action for presuit discovery and counsel for the class in the federal class action lawsuit. In that affidavit, Hedlund averred that Beale executed the settlement agreement without Hedlund's prior knowledge, consent or approval and prior to his personal receipt of any draft of the settlement agreement. Hedlund further averred:

"6. As Petitioner Beale's attorney in this action and his former

attorney in *** the pending Federal Class Action in which Petitioner Blanchard now serves as Class Representative of the certified class having substituted for Petitioner Beale in that capacity:

a. I was never asked, by anyone, to consent to communications from, or negotiations by, (1) Daniel R. Gravelyn or his firm *** or (2) Paul Freehling, Victoria Pappas or their firm *** [EdgeMark's counsel] *with* either Beale or Paul W. Carroll (Beale's attorney of record in *Merchandise Nat'l Bank of Chicago v. Beale*, No. 93 L 1178) with respect to Beale's claims in this action or Beale's claims in the Federal Class Action;

b. I never granted consent to anyone, including most specifically, Attorneys Gravelyn, Freehling or Pappas to conduct such communications or negotiations.

7. Upon information and belief, Attorney Carroll never told Attorney Gravelyn that he, Carroll, had authority to act on Beale's behalf in negotiating a settlement of Beale's claims in either this action or the Federal Class Action, without the consent or approval of myself and the Courts in both. In fact Attorney Carroll wrote to Attorney Gravelyn on June 11, 1996 (one day before the settlement was executed), 'reiterat[ing] that Joe Beale does not have the ability to effectuate a dismissal of the Discovery Petition pending before the Illinois Supreme Court.' " (Emphasis in original.)

In its memorandum in opposition to the motion for sanctions, EdgeMark argued, *inter alia*, that Blanchard did not have standing to seek sanctions since the enforcement motion had been filed by Beale, the only petitioner in the presuit discovery action at that time. EdgeMark argued that Beale could not seek sanctions because he could not enforce the discovery order since, prior to the filing of his enforcement motion, he had entered into a settlement agreement and had released all of his rights against EdgeMark. EdgeMark argued that Beale was represented by attorney Carroll during settlement negotiations and that attorney Hedlund was aware of the settlement negotiations and chose not to participate "because he considered himself to be in a conflict of interest position (and, indeed, he was)." EdgeMark further argued that the settlement agreement was valid even though it had not yet been approved by the federal court.

Attached to EdgeMark's memorandum of law were documents which showed that drafts of the settlement agreement had been sent by facsimile to Hedlund from Carroll on June 10, 1996, and June 11, 1996, and that Hedlund responded by letter to Carroll by facsimile on June 13, 1996, in which Hedlund referenced prior conversations with Carroll relating to the settlement agreement. The June 13, 1996, letter showed Hedlund's admission that his own conflict of interest as

counsel to the class precluded him from "comment[ing] further upon the proposed Settlement Agreement." It also showed that Hedlund advised Carroll that Beale's settlement agreement would have to be presented to the federal court for prior determination and approval.

On July 2, 1997, the trial court denied Blanchard's petition for sanctions, fees and costs. In its order, the court stated that it had no jurisdiction or authority to investigate or decide allegations of violation of Rule 4.2 of the Illinois Rules of Professional Conduct and the court refused to make any findings in that regard.

## ANALYSIS

■ On appeal, Blanchard argues that the trial court abused its discretion by denying his motion for sanctions. Blanchard contends that he was entitled to sanctions pursuant to Supreme Court Rules 219(a) and (c) (134 Ill. 2d Rs. 219(a), (c)) because EdgeMark resisted, without justification, Beale's motion to enforce the June 4, 1994, discovery order. He contends that EdgeMark presented a "spurious defense" to the enforcement motion, namely, Beale's lack of standing to enforce the Rule 224 order due to Beale's release of all his rights against EdgeMark; and that the spuriousness of that defense was demonstrated by EdgeMark's voluntary surrender of the relevant document on the eve of the hearing on the enforcement motion. Blanchard also argues that spuriousness is manifest in EdgeMark's failure to move to dismiss the Rule 224 action once Beale executed the settlement agreement and that its failure to do so required briefing, further delay and unnecessary increased costs. As evidence of willful conduct warranting Rule 219 sanctions, Blanchard cites to what he characterizes as EdgeMark's "blatant violation" of Rule 4.2 of the Illinois Rules of Professional Conduct (134 Ill. 2d R. 4.2). He contends that EdgeMark settled with petitioner Beale "without the consent of Mr. Hedlund, notice or consent from the trial court, and was not otherwise authorized by law to do so."

Supreme Court Rule 219(a) provides in pertinent part:

"If a party *** fails to *** comply with a request for the production of documents *** the party serving the request may on like notice move for an order compelling *** compliance with the request. If the court finds that the refusal or failure was without substantial justification, the court shall require the offending party *** to pay to the aggrieved party the amount of reasonable expenses incurred in obtaining the order, including reasonable attorney's fees." 134 Ill. 2d R. 219(a).

Supreme Court Rule 219(c) allows for the discretionary award of various types of sanctions, including the award of reasonable expenses, when a party unreasonably refuses to comply with various enumer-

ated orders of the trial court. 134 Ill. 2d R. 219(c). The trial court is granted substantial discretion in ruling on discovery sanctions, and a reversal of its decision is justified only when the record establishes a clear abuse of discretion. *Sander v. Dow Chemical Co.*, 166 Ill. 2d 48, 67-68, 651 N.E.2d 1071, 1081 (1995); *Hartnett v. Stack*, 241 Ill. App. 3d 157, 172, 607 N.E.2d 703, 714 (1993).

■ It appears from the record that the trial court found that Edge-Mark's refusal to produce the document sought in the Rule 224 proceedings was justified. That conclusion was not an abuse of discretion. The facts show that Beale, through attorney Hedlund, made two requests for the document. The first request, which occurred on October 7, 1996, five days after the Illinois Supreme Court denied leave to appeal, was made by letter from attorney Hedlund while Beale was the sole petitioner. That request was made prior to the issuance of the appellate mandate and thus was legally premature. The second request occurred on November 7, 1996, after the mandate had issued, when attorney Hedlund, again while Beale remained the sole petitioner, filed a motion for immediate enforcement. At the time both requests were made, Beale was the sole petitioner in the Rule 224 action and Hedlund, his attorney in that matter, was indisputably aware that Beale had signed the settlement agreement releasing EdgeMark of all claims Beale had against it. Hedlund's knowledge of that settlement is evidenced in his letter to attorney Carroll dated June 13, 1996, in which he referenced conversations he had had with Carroll concerning the settlement agreement and in which he indicated that he could not comment on the settlement agreement because of his conflict of interest in representing the plaintiff class in the federal lawsuit.

Despite knowledge of the settlement agreement and its provision allowing for the substitution of petitioner in the Rule 224 action, no attempt was made to substitute prior to filing the enforcement motion. Moreover, when filed, the enforcement motion did not apprise the court of the existence of the settlement agreement. That fact was first disclosed to the court at the hearing on the enforcement motion when counsel for EdgeMark presented a copy of the settlement agreement and argued that Beale had no standing to seek production of the document that was the subject of the June 4, 1994, order. The trial court thereupon ordered the parties to brief the issue of the effect of the settlement agreement on the Rule 224 proceedings.

Given this scenario, it was not an abuse of discretion for the trial court ruling on the sanctions motion to find that EdgeMark's actions in refusing Beale's document requests and in filing a memorandum in opposition to Beale's enforcement motion were not spurious or unjusti-

fied. In fact, EdgeMark's memorandum was prepared at the order of the trial court and raised a clear issue as to Beale's standing to obtain documents from EdgeMark when Beale had released all of his rights against EdgeMark in the settlement agreement. If anything, the actions of counsel for Beale are to be questioned. It would appear that Beale's counsel sought to use the window of time during which approval of the settlement agreement was being sought in the federal class action lawsuit to pursue Beale's rights in the state court even though no such approval was necessitated in the state court action where Beale was acting in an individual capacity and was not purporting to represent the interests of a class.

Moreover, contrary to Blanchard's contentions, the trial court did not, on March 19, 1997, when entering the enforcement order, reject as spurious EdgeMark's argument that Beale had no standing to enforce the Rule 224 order, having yielded in his settlement agreement with EdgeMark whatever rights he may have had against Edge-Mark. Rather, as discussed above, at the hearing on that date the court indicated that there would have been a problem in entering an order to produce if the named plaintiff was Beale and if there was no substitution of parties. We note that the court's March 19, 1997, order requiring enforcement was entered jointly with an order granting leave to add Blanchard as an additional Rule 224 petitioner. Before entering that order, the court questioned whether the order to produce was necessary since EdgeMark had given the document to Hedlund on the day before the hearing. The court then granted that relief, not because it found Beale was entitled to the document or that Edge-Mark's refusal to produce the document was unjustified, but because EdgeMark had not advised the court of its intention to voluntarily produce the document sought in the Rule 224 proceeding. (EdgeMark's decision to produce the document occurred after Beale filed a motion to add Blanchard as a petitioner. As EdgeMark readily admits, that motion, once granted, would have eliminated the basis for EdgeMark's objection to the enforcement motion.)

■ We also reject Blanchard's contention that EdgeMark knew that its standing argument was spurious because EdgeMark did not seek to dismiss Beale's petition for leave to appeal to the Illinois Supreme Court or seek to dismiss the Rule 224 petition upon the Supreme Court's denial of leave to appeal on the basis of Beale's execution of the settlement agreement and releases. As EdgeMark correctly argues, it could not take either of these actions since the settlement agreement specifically provided for the "allow[ance of] counsel for Beale in the State Court Litigation to seek a substitute plaintiff for Beale."

■ Blanchard next argues that the trial court abused its discretion in failing to consider evidence of the alleged violation of Rule 4.2 of the Illinois Rules of Professional Conduct (134 Ill. 2d R. 4.2) by Edge-Mark's attorneys. That rule provides:

> "During the course of representing a client a lawyer shall not communicate or cause another to communicate on the subject of the representation with a party the lawyer knows to be represented by another lawyer in that matter unless the first lawyer has obtained the prior consent of the lawyer representing such other party or as may otherwise be authorized by law."

Blanchard contends that EdgeMark's attorneys negotiated a settlement with Beale without obtaining the prior consent of attorney Hedlund, Beale's counsel in the Rule 224 litigation and the federal class action lawsuit; without notice or consent from the trial court; and without otherwise being authorized by law. As noted above, in denying Blanchard's motion for sanctions, the trial court ruled that it did not have jurisdiction to investigate or decide claims involving violations of the Illinois Rules of Professional Conduct.

■ In the Illinois state court system the power to prescribe rules governing attorney conduct and attorney discipline rests solely with the Illinois Supreme Court. *People ex rel. Brazen v. Finley*, 119 Ill. 2d 485, 519 N.E.2d 898 (1988). That court, and the agency to which it has delegated that authority, the Attorney Registration and Disciplinary Commission, has the exclusive authority to discipline or sanction the unprofessional conduct of attorneys admitted to practice before it. *Finley*, 119 Ill. 2d 485, 519 N.E.2d 898; *In re Mitan*, 119 Ill. 2d 229, 518 N.E.2d 1000 (1987). A party cannot seek redress in the trial court for the mere misconduct of an attorney. Where what is sought is only to penalize the attorney for such misconduct, the only forum for exacting such punishment is the Illinois Supreme Court and its disciplinary arm, the Attorney Registration and Disciplinary Commission. *Mitan*, 119 Ill. 2d 229, 518 N.E.2d 1000. See *In re Marriage of Dall*, 212 Ill. App. 3d 85, 569 N.E.2d 1131 (1991); *People v. Camden*, 210 Ill. App. 3d 921, 569 N.E.2d 312 (1991); *Freeman v. Myers*, 191 Ill. App. 3d 223, 547 N.E.2d 586 (1989) (attorney cannot be sanctioned by the trial court for violating the Code of Professional Responsibility; Attorney Registration and Disciplinary Commission, as arm of Illinois Supreme Court, is forum for which the latter charges are to be heard and discipline imposed).

Argument can be made, however, that a trial court may consider attorney violations of the Illinois Rules of Professional Conduct if that misconduct results in prejudice or adversely impacts the rights of the parties in the case pending before it. See, *e.g.*, *Barliant v. Follett Corp.*,

74 Ill. 2d 226, 384 N.E.2d 316 (1978); *SK Handtool Corp. v. Dresser Industries, Inc.*, 246 Ill. App. 3d 979, 619 N.E.2d 1282 (1993) (courts can order disqualification of attorney for ethical violations involving conflicts of interest); *Lavaja v. Carter*, 153 Ill. App. 3d 317, 505 N.E.2d 694 (1987) (party adversely affected by conflict of interest has standing to move to disqualify attorney). The trial court can also rectify attorney misconduct by way of contempt proceedings. *E.g., Dall*, 212 Ill. App. 3d 85, 569 N.E.2d 1131; *Camden*, 210 Ill. App. 3d 921, 569 N.E.2d 312; *Freeman*, 191 Ill. App. 3d 223, 547 N.E.2d 586.

■ However, even if the trial court had discretion to invalidate transactions obtained in violation of Rule 4.2 where such violation prejudiced a party, no such prejudice was established in the instant case. We note that Blanchard is not seeking the imposition of sanctions upon the attorneys who committed the alleged Rule 4.2 violation. Instead, Blanchard seeks to sanction EdgeMark, a party and the client of the attorneys, contending that EdgeMark should be estopped from relying on its settlement agreement with Beale as the basis for its refusal to comply with the motion to enforce the Rule 224 order because that agreement was obtained in violation of Rule 4.2 of the Rules of Professional Conduct. Blanchard does not contend that the alleged violation of Rule 4.2 by EdgeMark's attorneys, resulting in a settlement agreement, prejudiced the rights of the parties to the Rule 224 action. In point of fact, Blanchard does not seek to invalidate the resulting settlement agreement on the grounds that it was procured through prejudicial misconduct since he cannot establish that the alleged misconduct was in itself prejudicial nor, for that matter, can he urge that he was prejudiced by the substantive provisions of the resulting agreement itself. See *Lavaja*, 153 Ill. App. 3d 317, 505 N.E.2d 694 (only party adversely affected by dual representation can argue conflict of interest and bring motion to disqualify).

In this regard, we note that Blanchard cannot show that the settlement agreement would not have been executed but for the alleged Rule 4.2 violation by EdgeMark's attorneys. Even if those attorneys had complied with Rule 4.2 by seeking the consent of attorney Hedlund, Beale's attorney in the state Rule 224 action and the federal class action, and even if Hedlund refused to give his consent, there is no reason to doubt that Beale would have executed the agreement notwithstanding that refusal since the terms of the settlement were beneficial to Beale and since Beale was in fact represented by other independent counsel during the settlement negotiations. It is axiomatic that a client has an absolute right to settle his or her case without the consent of counsel. *Herman v. Prudence Mutual Casualty Co.*, 41 Ill. 2d 468, 244 N.E.2d 809 (1969).

Moreover, attorney Hedlund could not have interposed an objection to Beale's settlement because he, himself, would have been in a serious conflict of interest situation.[3] Even now, any suggestion by Blanchard, or attorney Hedlund, counsel for Blanchard and Beale, that the settlement agreement is unenforceable would conflict with the interests of Beale, who remains a named petitioner in the instant state court action and for whom Hedlund remains as counsel, there having been no motion to withdraw filed in this action. (Beale has never been dismissed from the instant Rule 224 action. Contrary to the terms of the settlement agreement, Blanchard was not substituted for Beale as a party petitioner in the Rule 224 action; he was added as an additional petitioner.)

Strong argument also could be made that Blanchard suffered no prejudice as a result of the substantive terms of the settlement agreement because the settlement agreement allowed for the substitution of Beale in the Rule 224 action. It would appear from the terms of the settlement agreement that the parties to that agreement intended for the substituted party to succeed to all the rights that Beale had in the Rule 224 action including the right to obtain the document sought in the Rule 224 action.

Given the absence of any prejudicial impact on the parties to the Rule 224 action, the imposition of sanctions would have been improper and would have constituted a disciplinary proceeding against the attorneys which, as previously discussed, is within the exclusive jurisdiction of the supreme court.[4] See *Schwartz v. Cortelloni*, 177 Ill. 2d 166, 685 N.E.2d 871 (1997) (client cannot be sanctioned for alleged ethical

---

[3]A similar conflict of interest did not exist in the federal class action lawsuit. Blanchard's objections to the settlement agreement were filed by attorney Hedlund after Hedlund had filed a motion to withdraw as Beale's counsel in the federal court. See *Blanchard v. EdgeMark Financial Corp.*, 175 F.R.D. 293 (N.D. Ill. 1997).

[4]In reaching this conclusion, we distinguish our state court system from the federal court system. As the plaintiff notes, the federal district court magistrate assigned to Beale's federal class action lawsuit did impose sanctions against EdgeMark for violations of Federal Rule of Civil Procedure 23(e) (Fed. R. Civ. P. 23(e) (dismissing or compromising a class action lawsuit without approval of the court)) and Rule 4.2 of the Illinois Rules of Professional Conduct. See *Blanchard v. EdgeMark Financial Corp.*, 175 F.R.D. 293 (N.D. Ill. 1997). The allocation of responsibility and jurisdiction for attorney discipline is different under the federal court system than in the state court system. As stated in the text of this opinion, jurisdiction in the state court system is vested exclusively with the Illinois Supreme Court. *E.g.*, *People ex rel. Brazen v. Finley*, 119 Ill. 2d 485, 519 N.E.2d 898 (1988); *In re Mitan*, 119 Ill. 2d 229,

violation of her attorney); *Dall*, 212 Ill. App. 3d 85, 569 N.E.2d 1131; *Camden*, 210 Ill. App. 3d 921, 569 N.E.2d 312; *Freeman*, 191 Ill. App. 3d 223, 547 N.E.2d 586. If such misconduct by the attorneys had indeed occurred, then the Attorney Registration and Disciplinary Commission, the proper tribunal, could commence disciplinary proceedings against them.

Blanchard relies on *Heiden v. Ottinger*, 245 Ill. App. 3d 612, 616 N.E.2d 1005 (1993), in support of his contention that the trial court should have sanctioned EdgeMark for its attorneys' violation of Rule 4.2. In *Heiden*, the court in a paternity action held void a portion of a settlement agreement reached by the mother and father with the assistance of the father's attorney and without the knowledge of the mother's attorney. The voided portion of the settlement agreement provided that each party would pay his or her own costs and expenses. That provision contravened the mother's attorney's right to payment since the court made an earlier finding that the mother could not pay her attorney fees and that the father had the financial ability to con-

---

518 N.E.2d 1000 (1987). In the federal system, jurisdiction is dispersed among all of the courts. See, *e.g.*, *In re Air Crash Disaster Near Roselawn, Indiana, on October 13, 1994*, 909 F. Supp. 1116, 1120 (N.D. Ill. 1995) (imposing sanctions for violations of several rules, including Rule 4.2 of the Model Rules of Professional Conduct adopted by the Northern District of Illinois). See also *Roth v. Roth*, 84 Ill. App. 3d 240, 243, 405 N.E.2d 851, 854 (1980) (stating "ABA Code of Professional Responsibility is regarded as binding upon attorneys at the Federal bar. In Illinois, *** the Illinois Code of Professional Responsibility is not binding in the court").

The instant state action also is to be contrasted with the federal action in that the former does not involve a class and none of the parties urge that we consider prejudice to any class. As the federal action was brought as a class action, the court in that forum considered Rule 4.2 misconduct in light of its prejudice to the class. The court noted that Beale, as class representative, had breached his fiduciary obligations to the class by acting to their detriment in obtaining a favorable resolution of his individual claims; that the settlement negotiations affected the attorney-client relationship between Hedlund and Beale and forced Hedlund to withdraw as Beale's counsel in the class action; that potential prejudice could arise based upon facts and evidence surrounding Beale's claim which may no longer be admissible; and that the remaining class members could be forced to disproportionately shoulder the burden of attorney fees having lost Beale, the class representative with the largest claim. *Blanchard v. EdgeMark Financial Corp.*, 175 F.R.D. 293 (N.D. Ill. 1997). These ramifications are nonexistent in the instant state court action since no class issues have been raised before us nor have we been asked to consider or determine any class matters.

tribute toward those fees. The court, in a result-oriented analysis, considered the petitioning attorney's independent standing to void his client's settlement agreement to the extent that it prevented him from obtaining payment of his fees where there had been a deliberate attempt by the mother, the father, and the father's attorney to thwart that right to payment. While the court made mention of the fact that the father's attorney "appear[ed]" to have violated Rule 4.2, that fact was not pivotal to the court's analysis. Here, unlike in *Heiden*, Blanchard is not an attorney who seeks to enforce his independent right to fees nor, for the reasons discussed previously, is he otherwise prejudiced by the settlement. Moreover, as discussed above, Blanchard does not seek to upset the settlement agreement nor does he contend that EdgeMark colluded with Beale to obtain a settlement agreement that prejudiced Blanchard's rights or the rights of any of the parties in the Rule 224 action. The only infirmity with the settlement agreement in the instant case is that the attorneys who obtained it may have done so by violating Rule 4.2 of the Illinois Rules of Professional Conduct. That conduct, without more, can only be sanctioned by the Attorney Registration and Disciplinary Commission. See, *e.g.*, *Mitan*, 119 Ill. 2d 229, 518 N.E.2d 1000.

For the foregoing reasons, the order of the circuit court of Cook County is affirmed.

Affirmed.

LEAVITT, P.J., and CAHILL, J., concur.